BROADHEAD *v.* STONE.

May 12, 1952

No. 38271 58 So. 2d 803

912

*. deQuincy V. Sutton,* Meridian, for appellant.

914

*J. H. Sumrall,* Jackson, for appellee.

McGᴇʜᴇᴇ, C. J.

In this suit a taxpayer seeks to have declared null and void, for want of due process of law, the procedure whereby the State Tax Commission assessed him with

additional income taxes for the years 1941 through 1946, amounting to many thousands of dollars in excess of the taxes theretofore paid on the reported income for the same six-year period.

The petition or bill of complaint of the taxpayer also seeks to enjoin the defendant Tax Commissioner from taking further action toward the collection of the additional taxes claimed under the assessment in question; asks for the cancellation, as a cloud upon his title to lands and timber in Clarke County, the tax distraint warrant issued on January 26, 1951, and now enrolled as a judgment lien thereon; and that the Sheriff of Clarke County be enjoined from executing the warrant now held by him for the collection of such taxes.

The answer of the defendant challenges the jurisdiction of the Chancery Court of Hinds County over the subject matter to the extent that the suit seeks to cancel the warrant as a cloud upon the title of real estate in another county, and to enjoin the sheriff of the other county from executing the warrant for the collection of the taxes in question; it concedes the jurisdiction of the court at Jackson in a proper case to inquire into the validity of the assessments made by the State Tax Commission. Nevertheless, if the assessment had been declared void, for want of due process, then the petitioner would have been entitled to enjoin the defendant State Tax Commissioner from collecting the taxes claimed by him to be due thereon, without regard to whether or not he was entitled to the other relief prayed for in that particular forum. Section 1340, Code of 1942.

From a final decree dismissing the petition or bill of complaint on its merits, and denying to the taxpayer any of the relief prayed for, he prosecutes this appeal.

The petitioner, or complainant, had, prior to the filing of the petition or bill of complaint, offered to do equity by agreeing in writing to settle with the State on the basis of his Federal tax liability when the same was

determined from the audit then being made by the Bureau of Internal Revenue, and further offered to do equity in his pleading by declaring himself ready to pay to the State any income tax which he owes at any time the same may be determined upon facts shown or agreed to.

The appellant, Sam E. Broadhead, filed returns in regular form with the Income Tax Division of the State Tax Commission for the years 1941 through 1946. The returns for each of the years of that period were made on or before March 15th of the following year, except that the return for the year 1946 was not made until on or before May 15, 1947, pursuant to an extension granted the taxpayer in that behalf. On September 17, 1947, the taxpayer was notified of a proposed additional assessment covering the years of 1941 through 1946 inclusive in the sum of $36,450.09. Thereafter, on September 23, 1947, the taxpayer wrote the Chief of the Income Tax Division, hereinafter referred to as the "Chief" for the sake of brevity, and suggested that the additional assessment for the years 1941, 1942 and 1943 was barred by a three-year statute of limitation, but asked that he be granted a sixty-day extension within which to have the assessment for each of the six years checked.

In his reply on September 26, 1947, the Chief took issue with the taxpayer as to whether or not the additional assessment on any of the years in question was barred by the statute of limitation, but he nevertheless granted the sixty-day extension to enable the taxpayer to have the statement of the proposed additional assessment duly checked to ascertain whether or not the same was correct; but he then inquired of the taxpayer as to why he needed the additional time. Not having received a reply to this letter, the Chief on October 4, 1947, quoted that portion of his last letter to the taxpayer and reminded him that more than ten days had elapsed and that he desired a response to his inquiry.

Thereafter, on October 15, 1947, the taxpayer wrote the Chief and stated that he had employed Mr. W. H. Becker of Brookhaven, Mississippi, a tax consultant, to handle the matter for him, and then reminded the Chief that at Mr. Becker's request the taxpayer had obtained the sixty-day extension in which to check his records, and further stated that although he felt that the assessments for 1941, 1942 and 1943 were barred, he was nevertheless having them checked along with the other years. In that letter the taxpayer stated, "I should like very much to have a statement as to how you arrived at the assessment you have made. I do not have any record of your auditors checking my books for most of these years. I believe I am entitled to this information so that I can have this matter checked more intelligently."

On October 20, 1947, the Chief replied, "We only know that as of December 31, 1946, your net worth exceeded the net worth of January 1, 1941, in the sum of $352,-000.00. When this income was realized is not known here, but my suggestion is that we withdraw our proposed assessment, * * * and determine the tax liability thereon on the basis of it having been realized during 1946." It is entirely probable, or at least conceivable, that the taxpayer was not ready to either agree for $352,000 of additional income to be allocated and assessed to him over the entire six-year period, or to agree that it be assessed as increased net worth realized during the year 1946. The proposed assessment had then been increased to the sum of $37,256.05, including additional interest.

Section 9244, Code of 1942, reads as follows: "If the Commissioner has reason, based upon facts, to believe that the amount of any income return is understated he shall give notice to the taxpayer making the return to show cause why the amount of the income returned should not be increased, and upon proof of the amount understated, may increase the amount accordingly. Such

taxpayer may furnish testimony to prove any relevant facts, under such rules of procedure as may be prescribed by the Commissioner with the approval of the Governor."

 Therefore, at the time it was suggested to the taxpayer that the $352,000 of increased net worth be considered as having been realized during 1946, he had not been advised upon what facts the proposed assessment was to be based and there had been no "proof of the amount understated." This was merely a proposed assessment under the statute last above quoted, the correctness of which alleged additional tax liability would ordinarily be determined in the manner provided in Section 9253, Code of 1942, when the taxpayer would be entitled to know on what fact or facts reported income is proposed to be increased in order that he may explain how the additional income was acquired or dispute the authenticity or correctness of the data relied on by the Commissioner. The taxpayer should do one or the other when a prima facie case of understatement in his reported income has been shown. It is true that the statute quoted in the preceding paragraph expressly provides that "upon proof of the amount understated" the Commissioner may increase the amount accordingly, but this proof may arise out of all the evidence as to whether or not the amount of increase in net worth is all taxable income for the period in question.

On January 21, 1948, the Chief again wrote to the taxpayer, calling attention to the letter of October 20, 1947, and stating that "sufficient time has been given you in which to investigate the propriety of this assessment, and because of your failure to respond thereto notice and demand is hereby made * * * that the above stated sum be remitted to this office within ten days of the date hereof. I again urge that if this amount is not properly due that you immediately advise this office."

The letter last above mentioned was answered by Mr. Becker on January 26, 1948, and in his letter the author

stated that the taxpayer "has made several requests of you for a statement as to how you arrived at the assessment you have made against him, but I fail to find any reply to his requests. Surely you don't expect any taxpayer to pay an assessment when you are unable to give him information as to how you have arrived at the amount you claim is due. If there is any reason that this information cannot be furnished, please let us know why it is." On January 30, 1948, the Chief replied to this letter by furnishing Mr. Becker a copy of the letter addressed to the taxpayer under date of October 20, 1947, hereinbefore referred to. Thereupon, there followed an exchange of letters between the Chief and a district supervisor; and then on June 22, 1948, the Chief again wrote to the taxpayer reminding him of his letter of September 17, 1947, relative to the proposed additional income tax assessment for the calendar years of 1941 through 1946. The Chief wrote the taxpayer again on August 10, 1948, in substance, the same letter that he had written him on January 21, 1948, hereinbefore quoted from. Then, on August 20, 1948, Mr. Becker wrote to the taxpayer, stating that he had had an agreement with the Chief "that he would hold up any proceedings until after the Federal Government had made an official assessment against you. He requested that you write him a letter, and I am enclosing herewith a letter that you will please sign and mail to Mr. Eason at once."

On August 21, 1948, the taxpayer addressed a letter to the Chief, pursuant to Mr. Becker's request that he do so, and in which letter the taxpayer stated: "I am asking you to hold up any proceedings on my state income tax for the years 1941 through 1946 (on which you have made an assessment) until I have an official assessment from the federal government. I am advised by my attorney that if I make or attempt to make any settlement of this matter with you it might prejudice my case with the government. You are well aware of the fact that I have

ample and sufficient property and that you will not jeopardize the State's interest in granting this request." To this letter, the Chief replied on August 25, 1948, that "You are advised that we shall be glad to comply with your request and it is understood that when this matter has been settled with the Federal Government, you will proceed to settle with this office."

Thus it will be seen that there was no occasion for the taxpayer to then request a hearing before the State Tax Commission on its claim, since he had agreed with the Chief that he would settle with the State on the basis of the amount of his taxable income as determined by the Federal Government whenever such determination should be made. But, thereafter, on August 8, 1949, at a time when the Bureau of Internal Revenue had not yet determined the tax liability of the taxpayer to the Federal Government, the Chief wrote the taxpayer and quoted from his letter to him of August 25, 1948, and further stated: "It is my understanding that you have not objected to the deficiency of income taxes proposed against you by the Bureau of Internal Revenue for the calendar years 1941 to 1946 inclusive. I am sending my file to Mr. W. E. Kittrell, our District Supervisor in Meridian, with the request that he contact you and close this matter." A copy of this letter was sent to Mr. Kittrell, who replied to the Chief and stated that he had found that the taxpayer had moved to Quitman, Clarke County, Mississippi, and had purchased the lumber company formerly operated by Harris-Brooks Lumber Company; that the taxpayer's office in Quitman had advised him over the telephone that the taxpayer was out of town and would not return until Thursday morning but that he would keep the Chief advised as to the progress made in connection with the case.

On August 26, 1949, the taxpayer wrote directly to the State Tax Commission, saying: "In regard to your proposed assessment of State Income Taxes, I would like

for you to hold it until a final settlement is made with the Federal Government. At such time that this is made I will make settlement with the State on the same basis insofar as State Laws are applicable." On August 29, 1949, Mr. Kittrell wrote to the Chief, returning to him the file of this taxpayer, and stating: "As you already know, the taxpayer's records have been under audit by the Bureau of Internal Revenue for three years. Final assessments have not as yet been made, and we have requested Mr. Broadhead to advise the Commission that settlement will be made to the State as soon as practicable after settlement has been reached with the Bureau. Mr. Broadhead's statement to that effect is enclosed herewith."

On January 12, 1950, the Chief wrote to the taxpayer stating: "On August 26, 1949, you asked that disposition of our income tax claim against you be deferred until settlement could be reached by the Bureau of Internal Revenue. Inquiry is made as to the present status of this matter." On January 15, 1951, the Chief wrote to the taxpayer calling attention to the letter of January 12, 1950, and stated: "More than a year has elapsed since the above communication was addressed you and inquiry is again made as to the present status of this matter." At the bottom of this letter, the taxpayer wrote: "This matter is before the Technical Staff, Bureau of Internal Revenue at New Orleans. I believe it will be concluded in May, according to their statements, but have no way of knowing definitely."

. On that same day, the Chief wrote to the taxpayer, quoting his letter to him of January 12, 1950, and stating that he was awaiting a response. Evidently a copy of this letter was sent by the Chief to Mr. Kittrell, and he wrote at the bottom thereof on January 16, 1951, the following letter addressed to the Chief, to-wit: "Recently this taxpayer made a large sale of timber to International Paper Company. Today the Bureau is taking

steps necessary to record a lien. Our recommendation, in the face of these developments of the last few days, is that a warrant be issued immediately.'' At the bottom of this letter, there appears an ''ink notation,'' as follows: ''Add income tax 41, 42, 43, 44, 45 46—

| | |
|---|---|
| Tax | $20,148.97 |
| Penalty | 8,514.49 |
| Int. to 2/15/51 | 15,408.12 |

$44,071.58''

And on January 20, 1951, a warrant for this amount was issued to the Sheriff of Lauderdale County, and on January 26, 1951, an alias warrant, was issued to the Sheriff of Clarke County, to levy upon and sell the real and personal property of the taxpayer for the collection of $44,071.58 and all costs.

This warrant was issued, and a request that the same be levied was made without the taxpayer having been notified that the State Tax Commission would no longer be bound by the written agreement hereinbefore set forth in regard to the withholding of further proceedings until the tax liability to the Federal Government had finally been determined, and without the taxpayer being offered an opportunity to appear before the Commission for a hearing in the matter before the assessment lien against his real and personal property should be made final. Prior to this action, the taxpayer was entitled to assume that it was unnecessary that he request a hearing since he had agreed in writing to pay his state income taxes for the years in question on the basis of the determination of his Federal tax liability, and this regardless of how much he should owe to the State, applying the State laws where applicable to his taxable income instead of the Federal law in regard thereto.

It is true that the taxpayer had been dilatory to such an extent that the Tax Commission was warranted in believing that his delay and lack of cooperation was in-

excusable, nevertheless, a tax evader is entitled to due process, including the right to be heard before the Commission prior to a termination of the written agreement had with him that the amount of his tax liability was to be governed by the amount determined to be due the Federal Government, applying the State laws where applicable instead of the Federal laws as to the amount of tax that he should pay.

Following the issuance of the warrant hereinbefore mentioned, to-wit: On February 6, 1951, the taxpayer employed an attorney to protect his interest in the premises. The attorney thereupon wrote to the Chief of the State Income Tax Division reminding the said official of the agreement made with the taxpayer "to hold up any proceedings until after the Federal Government had made an official assessment," and inquired whether "regardless of that which has or has not been done, the way is open for a definitive and informed disposition of the matter in a routine way." This letter was answered on February 9, 1951, by an auditor of the Income Tax Division, suggesting that the taxpayer contact Mr. W. E. Kittrell, district supervisor at Meridian, for any further information desired. The attorney thereupon, on February 13, 1951, wrote to Mr. Kittrell and inquired of him whether, regardless of who did or did not do what, the matter might now proceed to routine settlement on factual bases. To this letter, Mr. Kittrell replied that he was unable to contact the Chief of the State Income Tax Division on the phone that day but that he felt sure "that he (the Chief) would proceed on the basis suggested by you," but that "If you have all the facts and figures in this case they should be presented to Mr. Eason in his office."

Thereupon, on February 16, 1951, the attorney wrote to the Chief stating that he had been referred to Mr. Kittrell, and that Mr. Kittrell had in turn referred him again to the Chief, and wanting to know "Who writes to

who, now?''; and inquiring further as to whether the warrant had been issued ''with the consciousness that it represented a change in the agreement Mr. Becker said he had with you to the effect that you would take no further action until the Federal determination had been made. Further, we'd like to know, in view of the stringency, whether the warrant may be cancelled and the case proceed to a routine closing on its merits, you to receive such reasonable surety of performance as upon which we may agree.'' On February 19, 1951, the Chief replied that the matter had been referred back to him by Mr. Kittrell, and that ''I can tell you now that I have not recalled a warrant, within my recollection, and I think the best thing to do is to pay the warrant and then seek a refund of any sums which are not properly due.'' On the next day, the Chief advised the attorney that: ''I (now) have the Sam E. Broadhead file. I shall be glad to talk to you about this matter at any time. * * * The warrant may not be canceled because I have never canceled one unless there was a flagrant and definite error. * * * we expect to maintain our position.''

In reply to the letter last above mentioned, on February 26, 1951, the attorney wrote the Chief that: ''We desire to engage in conference with representatives of the State Tax Commission, point out the error of the assessment outstanding, demonstrate the correct net taxable income for the years in question, pay the tax and additions properly due, and have the warrant cancelled because satisfied. The information we now seek is on the method by which that may be accomplished, without resorting to the process established for court review. If you are agreeable to such a conference, or series of them if necessary, then we are prepared to appear at any time after mid-March. If you do not desire to afford us that opportunity, then we would appreciate a clear statement from you that it is denied. If the letters which I have written are inadequate as a request for the proceedings

I ask, then we would appreciate it if you would advise the form in which such request should be presented.'' On March 13, 1951, the Chief wrote to the attorney, and quoted to him only a portion of the letter which had been written to the attorney on February 20, 1951, as follows: ''I have the Sam E. Broadhead file. I shall be glad to talk to you about this matter at any time.'' He did not quote that portion of his said former letter in which he had advised the attorney that he would not cancel the warrant, but suggested that the warrant be satisfied, upon the theory that when that was done the taxpayer could then seek a refund if he paid more in satisfaction of the warrant than was actually due.

Provision is made under the State Sales Tax Law for a taxpayer to pay an erroneous assessment and then file a suit in the circuit court in the county of his residence to recover the same, but this remedy is not afforded to a taxpayer who may pay more income tax than is justly due. Moreover, Section 9251, Code of 1942, gives the taxpayer the right to apply to the Commission for a revision of the tax assessed against him within only ''three years from the time of the filing of the return or from the date of the notice of the assessment of any additional tax. The Commissioner shall grant a hearing thereon, and if upon such hearing, he shall determine that the tax is excessive or incorrect, he shall resettle the same according to the law and the facts and adjust the computation of the tax accordingly.'' Thus, it will be seen that the Commissioner would not have been required to consider the taxpayer's claim for revision of the tax unless he had applied for the same within three years from the time of the filing of the return or from the date of the notice of the assessment of the additional tax. The returns were filed, as hereinbefore stated, on or before March 15th of each of the years from 1941 through 1946, except that the return for the year 1946 was filed on or before May 15, 1947, pursuant to an extension in that

behalf, as heretofore stated. Thus, it will be seen that at the time the demand was made of the taxpayer that he pay the amount called for by the warrant, which was issued on January 26, 1951, all remedy of the taxpayer to seek a revision and refund, if he had then paid the warrant, had expired, and during the latter part of which intervening period the taxpayer had relied upon his agreement with the Commission that he could settle his state income tax on the basis of his Federal income tax liability when the latter had been determined.

Following the correspondence between the Chief and the attorney for the taxpayer, there was executed by the taxpayer on March 20, 1951, a purported waiver of the alleged three-year statute of limitation in consideration of forbearance by the State Tax Commission until such time as the parties could determine the correct amount of taxes claimed to be due, but this waiver was not accepted. And on March 22, 1951, Mr. Kittrell sent the waiver to the Chief of the Income Tax Division, and in his letter conceded that the attorney ''did bring us some figures, which were not examined by us, to reduce the gross income figure established by the Bureau of Internal Revenue. It should be stated that the Bureau has not given notice of the amount of their assessment.'' In this letter, Mr. Kittrell further stated to the Chief ''As already stated the value of Mr. Broadhead's mill is approximately $225,000.00, and there are no encumbrances. The interest of the State would be fully protected through the recorded judgment against the mill without regard to the cut-over land.'' It appears that the warrant had been issued on the ground that the taxpayer was about to dispose of his timberland for the sum of $1,600,000. But more about this later.

The proposed sale of the timber being the sole basis on which the Tax Commission had decided that it was justified in ignoring the written agreement to hold up further proceedings until the final determination of the

tax liability by the Federal Government, it is to be noted that the petition of the taxpayer herein seeking to have declared void the proceedings whereby the assessment of the additional taxes was made contains an allegation that the Tax Commission acted upon, without verifying the truth thereof, a statement of one of its field representatives in a letter which read: "Recently this taxpayer made a large sale of timber to International Paper Company. Today the Bureau is taking steps necessary to record a lien"; and the petition then alleges that "both those statements being inaccurate, susceptible of ready and easy verification and not verified by Defendant when, in truth and fact Petitioner had entered into a contract to sell a large part of his timber holdings to International Paper Company and to buy back from them the merchantable timber as required by him in his sawmill operations from year-to-year but such sale was not to become effective unless and until Petitioner could and did offer to deliver merchantable and legal title to 90% of the acreage involved in the tract of some 30,000 acres, more or less and the abstracting of title—a necessary preliminary step to delivery of title in this proposed transaction—was not commenced at that date and is not more than 40% complete at the date this petition is filed and, furthermore, Petitioner, voluntarily and not knowing of the recommendation discussed herein and not knowing of the erroneous information on which Defendant was acting filed his return of net income for the year 1950 and, on the very first sheet attached to that return as a schedule, made this statement to Defendant, " ' * * * taxpayer has executed agreement to sell the bulk of timber holdings, and buy back the timber for mill operations, as the same may be cut during a period of five years from date of sale. The year of sale, if the same be accomplished, will be 1951; * * * ' "

The foregoing allegation of the petition is wholly undenied, and is therefore admitted by the answer of the defendant. Section 1291, Code of 1942.

 It appears that the basis for the claim that the additional assessment of $352,000 should be made for the years 1941 through 1946, and be prorated over that six-year period, is that the State Tax Commission learned from some balance sheets made by an accountant, J. Donovan Ready, formerly employed by the taxpayer, that his net worth increased from October 21, 1939, to December 31, 1946, in the sum of $546,575.18. The Tax Commission did not prove the correctness of these balance sheets by the testimony of Mr. Ready, or that of anyone else, but a field auditor found similar balance sheets or financial statements in the possession of the First National Bank of Meridian furnished in connection with the credit relationship of the taxpayer with the bank. Mr. Ready was the same accountant who had made out the state income tax returns for the taxpayer for each of the years in question except the year 1946, and had shown for all of the six-year period an income in the total amount of only $94,918.33, or a deficiency of $451,656.85. And since the increase in net worth was for a period beginning on October 21, 1939, and extending through December 31, 1946, and which therefore did not show the net worth of the taxpayer as of the beginning of the year 1941, the Commission reduced the deficiency from $451,656.85 to the sum of $352,000, and spread the latter amount over the six-year period in question by additionally assessing the taxpayer with $60,000 for each of the years 1941, 1942, 1943, 1944, 1945 and the remainder for the year 1946. But the briefs of counsel do not point out to us any authority for thus prorating this alleged increase in net worth in such manner, even though the amount of the claim sought to be collected under the warrant involves an item of interest of $15,408.12. Moreover, at the trial the position taken by the defendant Tax Commission is

that when the present additional tax claim is settled there will be an additional assessment made for the difference between the deficiency of $451,656.85 and the $352,000, or an additional assessment of $99,656.85 of unreported income.

Section 9253, Code of 1942, provides that "The Commissioner, for the purpose of ascertaining the correctness of any return, * * * is hereby authorized, by any agent designated by the Commissioner with the approval of the Governor for that purpose, to examine any books, papers, records, or memoranda, bearing upon the matter required to be included in the return and may require the attendance of persons rendering return or of any officer or employee of such persons, or of any person having knowledge in the premises and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons." This statute is in aid of Section 9244, and provides the means whereby the proof of an amount understated in a tax return may be made. But in the instant case, the Commissioner relied solely upon the balance sheets produced by the accountant, Mr. Ready, pursuant to a subpoena issued to him by the Tax Commission as a former employee, and which were apparently prepared by the accountant for use of the taxpayer to obtain credit from a bank, since the bank was in possession of a copy thereof, and which balance sheets were not shown to have been signed by the taxpayer, or to constitute an inventory of his affairs, except as they related to the inventory for 1946 of lumber on hand, which was the same as that shown on the income tax return made by the taxpayer for that year. No research was made to determine whether the amount shown on the balance sheets were actual or estimated, cost or appraisal, or whether all liabilities were reflected. These balance sheets were not produced at any hearing where the taxpayer was present, or given an opportunity to be

present, when the accountant was subpoenaed to produce them. Moreover, he is not shown to have known the data on which the reported income for the years in question was increased until the hearing of this proceeding in the trial court.

As to the right of the Commission to allocate the $352,000 alleged gain in net worth over the six-year period in question by adding $60,000 to the reported income for each of the years 1941 to 1945 inclusive, and the remainder to the year 1946, there is no statute or decision cited in the briefs in support thereof. We find cited the case of U. S. v. Fenwick, 7 Cir., 177 F. 2d 488, wherein it was held that, in a prosecution for a criminal offense of tax evasion, the net worth of the taxpayer at the beginning of the tax year must be clearly and accurately established by competent evidence before the increased net worth method of proof is available. See also Bryan v. U. S., 5 Cir., 175 F. 2d 223; and Brodella v. U. S., 6 Cir., 184 F. 2d 823, as to the necessity for the evidence to establish the net worth at the beginning of the taxable period. Even the "best evidence available" method of proof would seem to require that the balance sheets, or financial statements, should have at least been verified and supported by the testimony of the accountant who made them as to their correctness, and especially in view of the fact that the accountant had prepared the income tax returns that were filed for most of the period in question.

In view of all of the facts hereinbefore set forth, we have reached the conclusion that notwithstanding the failure of the taxpayer to cooperate with the Income Tax Division as he should have done in arriving at the amount of additional taxes due, if any, for the years in question, there has nevertheless been a denial of due process of law in the making of this assessment final while the written agreement to abide the determination of the taxpayer's Federal income tax liability was still in full force

and effect; that if the agreement was to be terminated and summary action taken for the collection of the tax, the taxpayer should have been given an opportunity to be heard before the Commission, and at which hearing it would have been incumbent upon the Commission to make a prima facie showing that the amount of income had been understated in the returns made by the taxpayer for each of the years in question, since they were made under the penalties of perjury and presumed to be correct until the contrary was shown. We think that the cause should therefore be reversed, the assessment held to be invalid, and the cause remanded without prejudice to the right of the Tax Commission to proceed in the manner provided for under Section 9253, Code of 1942, for the ascertainment of the correct amount of additional tax that may be due, and without prejudice to the right of the taxpayer, in the event of an adverse decision at the hearing, to obtain a court review in the manner provided for by Section 9252, Code of 1942, if desired.

Reversed and remanded.

*Alexander, Hall, Kyle* and *Holmes, JJ.,* concur.

---

ON SUGGESTION OF ERROR

July 17, 1952 59 So. 2d 844

HOLMES, J.

The concluding paragraph of the opinion of the Court rendered in this cause on May 12, 1952, reads as follows:

"We think that the cause should therefore be reversed, the assessment held to be invalid, and the cause remanded without prejudice to the right of the Tax Commission to proceed in the manner provided for under Section 9253, Code of 1942, for the ascertainment of the correct amount of additional tax that may be due, and without prejudice to the right of the taxpayer, in the event of an adverse

decision at the hearing, to obtain a court review in the manner provided for by Section 9252, Code of 1942, if desired." [58 So. 2d 803, 811.]

Among other contentions of the appellee on Suggestion of Error, it is urged that if the assessment is held to be invalid, then the decree of the court below should be reversed and a decree entered here for the appellant, without prejudice to the right of the Tax Commission to proceed against the taxpayer under applicable statutes. Since we hold that the assessment is invalid and that the distraint warrant issued thereon is void and of no effect, we are of the opinion on reconsideration that the cause should not be remanded, but that the decree of the court below should be reversed and a decree entered here for the appellant, without prejudice to the right of the Tax Commission to terminate the agreement that the question of assessment in this case abide the determination of the taxpayer's Federal tax liability, and to proceed against the taxpayer under statutes applicable, and without prejudice to the right of the taxpayer, in the event of an adverse decision, to obtain a court review in the manner provided by statute. Accordingly, the original opinion herein rendered is modified by deleting therefrom the final paragraph herein first above quoted and by substituting in lieu thereof the following:

"We think, therefore, that the assessment is invalid and that the distraint warrant issued thereon is void and of no effect, and accordingly, the decree of the court below is reversed and a decree entered here for the appellant, without prejudice to the right of the Tax Commission to terminate the agreement that the question of assessment in this case abide the determination of the taxpayer's Federal tax liability, and to proceed in the manner provided for under Sections 9244 and 9253 of the Code of 1942, for the ascertainment of the correct amount of additional tax, if any, that may be due, and without prejudice to the right of the taxpayer, in the event of an

adverse decision at the hearing, to obtain a court review in the manner provided for by Section 9252, Code of 1942. if desired.''

Opinion modified and suggestion of error overruled.

All Justices concur.