West Brothers, Inc., et al. *v.* Illinois Cent. R. R. Co.

No. 39343 November 22, 1954 75 So. 2d 723

336

*Dudley W. Conner,* Hattiesburg, for appellants.

*Byrd, Wise & Smith,* Jackson, for appellee.

McGehee, C. J.

This is an appeal from a judgment of the Circuit Court of Hinds County which affirmed an order of the Mississippi Public Service Commission granting to the appellee, Illinois Central Railroad Company, a certificate of public convenience and necessity to operate two over-the-road trucks between Jackson, Mississippi, and Gulfport, Mississippi, via U. S. Highway No. 49, one each way per day.

The appellee applied for authority to operate over said highway as a common carrier of property by motor vehicle to and from the same towns now served by its freight trains, handling general commodities, but spe-

cifically including commodities generally moving in express service, and not now being handled at all, and such mail and parcel post as may be tendered to it by the United States Post Office Department, excepting dangerous explosives, commodities in bulk and commodities requiring special equipment, when moving in railroad LCL (less than carload) service, between the points mentioned, and to serve all points and places intermediate those two cities, along the said highway, as well as certain off-route (off the highway but on the railroad) points, and which intermediate stations are Florence, Star, Braxton, D'Lo, Mendenhall, Weathersby, Sanatorium, Magee, Saratoga, Mt. Olive, Collins, Seminary, Sanford, Lux, Hattiesburg, Camp Shelby, Brooklyn, Maxie, Wiggins, Perkinston, McHenry, Saucier and Lyman, and which railroad stations the appellee seeks to serve from depot to depot and from depot to pagoda by operating a daily service each way between Jackson and Gulfport, except Saturdays, Sundays and holidays, operating two trucks, one to leave Jackson at 6 o'clock A. M. and to serve the points set out above and to arrive at Gulfport the same day at 5 o'clock P. M., and another leaving Gulfport at 6 o'clock A. M., serving the same points and arriving at Jackson at 5 o'clock P. M., the same day, or such other schedules as may be adopted by the appellee and as will best meet the public needs.

The application expressly states that ''the proposed motor carrier service will be auxiliary to and in substitution for rail service now being performed by the appellee for the public wholly by rail.''

The cause came on for hearing before the Public Service Commission at the regular January Term 1953, was further heard at the February Term; and continued for further consideration from time to time, and with the result that the order of the Commission granting the certificate of public convenience and necessity was rendered on May 5, 1953.

The appellants, West Brothers, Inc., and H. & L. Delivery Service, Inc., protested the granting of the certificate as applied for, and at the commencement of the hearing the appellant West Brothers, Inc., filed a motion to dismiss the application of the appellee Railroad Company on the following grounds: 1. That said West Brothers, Inc., is a common carrier of property for hire by motor vehicle and is operating its trucks over the said U. S. Highway No. 49 from Jackson to Gulfport and return under the authority of the Public Service Commission, and that its property rights were involved in the proceeding; 2. that the appellee Railroad Company is a foreign corporation existing under and by virtue of special acts of the Legislature of the State of Illinois, which conferred upon the applicant the right only to operate a railroad upon tracks, and that therefore the State of Illinois did not authorize the said Railroad Company to operate as a common carrier by motor vehicle; 3. that by its application the Railroad Company seeks to conduct an operation which is ultra vires, and that the movant by reason of its interest as a protestant is entitled to raise this question; 4. that the identical application was filed by the applicant, and heard and dismissed by the Public Service Commission on June 25, 1952, and earlier by the Interstate Commerce Commission; and 5. that the application does not allege any changed conditions since the former applications were denied.

The motion above mentioned was taken under advisement and later overruled in the final order of the Commission after the conclusion of all of the evidence. The overruling of this motion is urged as one of the grounds assigned as error on this appeal.

Discussing the grounds of this motion in reverse order, and considering grounds 4 and 5 together, we find that the application of the appellee for the certificate of public convenience and necessity fully complied with the requirements from 1 to 7, inclusive, enumerated in Sec-

tion 7640, Code 1942, both as to the form and substance thereof, and as to requirement No. 8 the applicant undertook to furnish such additional information as the Commission deemed necessary or required.

██ ██ There is no provision in our Code chapter on Motor Carriers or on Public Service Commission (Sections 7632 to 7716, inclusive), which prohibits the filing of a new application within any limited time after a former application for the same relief has been denied. The Commission was of the opinion that the matter was not res adjudicata and that it had the right to consider a subsequent application, seeking the same relief as the former one, and to reach its decision on the proof then offered in support thereof as to public convenience and necessity as of the time of the hearing of the subsequent application. The view entertained by the Commission is analogous to the view adopted by the Supreme Court of the United States in the case of Pittsburgh & W. Va. R. Co. v. United States, 281 U. S. 479, 50 S. Ct. 378, 74 L. Ed. 980, which held that applications before the Interstate Commerce Commission for certificates of public convenience and necessity are not res adjudicata as to subsequent petitions for such a certificate, and that holding was cited in the case of Otis & Co. v. Pennsylvania R. Co., et al, 61 Fed. Supp. 905, (C. C. A. 3d) 155 Fed. 2d 522, as authority for the proposition that the defense of res adjudicata had been rejected by the United States Supreme Court in the Pittsburgh & W. Va. R. Co. case, supra.

The applications before the Interstate Commerce Commission prior to the hearing before the Public Service Commission in the instant case were heard in 1947 and 1949, at a time when the applicant Illinois Central Railroad Company was furnishing express service from Jackson to Gulfport and all of the intermediate railroad stations on or near Highway 49, by transporting the same on its passenger trains. Therefore a different situation now prevails for the consideration of the applica-

tion of the appellee now pending before the Interstate Commerce Commission for the right to transport in interstate commerce L. C. L. freight and express by the use of the two motor trucks. It is frankly admitted by the applicant in the instant case that unless such right is granted by the Interstate Commerce Commission the applicant can not afford to avail itself of the certificate which has been granted it for such service in its intrastate commerce. It is further conceded by the applicant that for economical reasons it cannot afford to operate the two trucks for the proposed service for express alone or for L. C. L. freight alone, since the trucks can not be operated except at a loss unless the applicant is given the right to carry both express and L. C. L. freight, both interstate and intrastate.

As to ground No. 3 of the motion, raising the question of ultra vires, the rule is stated in 13 Am. Jur., Corporations, Section 764, as follows: "As a general rule, the mere fact of competition with one's business, which results from the ultra vires act of a corporation, does not entitle such person to challenge the power of the corporation to engage therein. * * * ". See also Railroad Co. v. Ellerman, 105 U. S. 166, 26 L. Ed. 1015; English v. Landa Motor Lines, 166 S. W. 2d 721; Staacke v. Routledge, 111 Tex. 489, 241 S. W. 994, 999; and Home Owners' Loan Corp. v. Moore, et al, 184 Miss. 283, 185 So. 253. Cf. Southern Realty Co. v. Tchula Co-Operative Stores, 114 Miss. 309, 75 So. 121.

Moreover, in answer to ground No. 2 of the motion, which also in effect raises the question of ultra vires and constitutes the basis of ground No. 3 thereof last above discussed, it appears that the Legislature of Illinois in 1929 passed an Act giving railroad corporations operating a railroad in that State the specific authority to acquire, own and operate motor vehicles for the purpose of transporting property over the highways for hire. That Act is set forth in Chapter 114, Section 49 (a) of the Illinois Revised Statutes, and the pertinent

part thereof reads as follows: "Any railroad corporation operating a railroad in this State may acquire, own and operate motor vehicles for the purpose of transporting persons and property over the public highways for hire, subject to the provisions of any law regulating the use of motor vehicles, * * *."

▉▉▉ It would seem that when the appellee, Illinois Central Railroad Company, filed its charter for record in the office of the Secretary of State of Mississippi and qualified, and thereafter continued from year to year to do business in this State as an Illinois corporation, it would be entitled to exercise all of the rights and powers in this State that it could exercise under its charter or the laws in Illinois, unless the exercise thereof is shown to be contrary to the public policy and laws of our State. In this connection it is shown by the proof in this case that the appellee, Illinois Central Railroad Company, was already operating as a common carrier by motor vehicle along its line of railway from Jackson to Memphis and throughout 54.39 percent of its entire railroad system, under the authority of the Public Service Commission of this State, and by permission of the proper state authorities in the other states traversed by its line of railway, and of course under the authority of the Interstate Commerce Commission.

As to ground No. 1 of the motion it is conceded by the appellee Railroad Company that the protestants have such an interest in the proceeding as would entitle them to protest the granting of the certificate of public convenience and necessity herein, but the appellee does not agree that appellants are entitled to raise the question of ultra vires.

▉▉▉ We are of the opinion that the Public Service Commission was not in error in overruling the motion to dismiss the application, and that the case was properly heard on its merits.

Under the facts hereinbefore set forth as to what rights the applicant applied for, and the proof offered

in support of its application, the Public Service Commission made the following findings of fact, which are set forth in the order of the Commission granting the certificate of public convenience and necessity, to-wit: First, that the proposed motor vehicle service, to be operated under the schedule and with the number of trucks hereinbefore mentioned, would not constitute an undue burden on said highway. Second, that the operation of the two trucks will be directly under the control and supervision of the applicant, and will not constitute a delegation of its authority, and that the applicant is able to carry out its proposal in a satisfactory manner. Third, that the proposed truck operation will handle LCL freight which is now handled on the freight trains of the applicant, which trains also carry carload shipments. Fourth, that the trucks will also handle express for the Railway Express Agency, Inc., to all points on the route, and which express service the Commission finds is not available to any of the points mentioned between Jackson and Hattiesburg and between Hattiesburg and Gulfport. Fifth, that the freight service applied for in the application ''is auxiliary to the said service now being performed by the applicant and that said service will be a substituted service and purely accessory to the main railroad operation, but that the substitution of the truck operation to handle LCL freight will result in the saving of cars to the railroad and to the shipping public, and save switching time, resulting in both a financial saving to the railroad and increased service to the shipping public.'' Sixth, that at the present time the applicant is operating an over-the-road motor truck service paralleling about 50% of its total rail mileage from Chicago to New Orleans and the Gulf Coast and that these services have proved satisfactory elsewhere along the railroad in providing a dependable daily service, saving box cars, improving the performance of the freight trains and effecting certain economies; and that the certificate applied for will furnish a

dependable daily service which is not possible under the box car operation because of light volume. And seven, that ''there is a definite and an immediate need for the restoration of express service to all points to be served by the applicant, and that it is apparent to this Commission that express service can not be furnished by any other common carrier, * * *.''

In support of the foregoing finding the proof discloses that on November 16, 1950, all passenger train service over the line of the applicant's railroad from Jackson to Gulfport was discontinued and that there has been no express service since that time to any of the intermediate points between Jackson and Gulfport except the express service furnished to Hattiesburg by the Southern Railway Company. Of course the City of Jackson has been furnished with express service over lines of railroad other than the Gulfport Division of the applicant, that is to say its line from Jackson to Gulfport, and the City of Gulfport is being furnished express service by the L. & N. Railroad, running from Mobile to New Orleans and other points east and west. There was ample proof to show, and the Commission so found as a fact as hereinbefore shown, that there is an immediate need for the restoration of express service to all points to be served under the certificate granted to the applicant, and that express service can not be furnished by any other common carrier.

■■■ We are not concerned here with the sufficiency or insufficiency of the applicant's reasons for discontinuing its passenger train service between Jackson and Gulfport on November 16, 1950. The facts in that regard are not developed in this record and we must assume in the absence of proof to the contrary that the passenger train service was discontinued because of the loss of revenue, or the failure to make a profit, on the operation of the passenger trains. But, be that as it may, the proof does disclose that the Railway Express Agency, Inc., is a subsidiary of the railroads and that

it does not enter into contracts anywhere in the United States with common carriers by motor vehicle for the transportation of express other than those common carriers by motor vehicle that are operated by the railroad companies. The appellant common carriers by motor vehicle offered testimony to show, and did show, that they have been unable to get a contract with the Railway Express Agency to haul its express, and it was admitted by the District Supervisor of the Railway Express Agency that such agency was unwilling to enter into contract with any carrier other than the railroads for the transportation of its express, and that the cost to the Express Agency for handling express alone over the route by motor trucks would be prohibitive, and that it would be impracticable to handle it by freight trains. Therefore, it would have been a vain and useless thing for the Public Service Commission to have undertaken to accept the offer of the appellants to furnish express service. Hence it follows that our decisions to the effect that the existing carriers by motor vehicle must first be allowed to supply this service before the Commission would be authorized to grant the application of the appellee Railroad Company here in question, are wholly inapplicable to the situation presented by this record. Those cases in the main deal with situations where the applicants were seeking certificates to operate over routes not theretofore served by them, that is to say, they wanted the privilege of becoming common carriers by motor vehicle as newcomers over the route. Whereas in the instant case the applicant Railroad Company has handled LCL freight to and from all the localities mentioned in its application between Jackson and Gulfport for many years, and long prior to the time when the appellants began to handle such freight to and from these localities. As to express service, the same has never been rendered by the appellant motor carriers, and the proof offered by them as well as that offered by the appellee Railroad Company clearly discloses without

dispute that neither of the appellants would be able by negotiation with the Railway Express Company to render express service along the highway, even if the Public Service Commission had offered them the opportunity to do so before granting the certificate to the appellee Railroad Company. In other words, being willing to perform this service is not sufficient; the existing carriers over the highway must also be now able or in position to become able and ready within a reasonable time to arrange for the performance of, and to perform, such service.

 The applicant here is merely seeking to be allowed to resume the service of carrying express throughout the same territory that it had been serving in that respect for decades and until November 16, 1950, and which service has been performed by no carrier since that time. As to the proposed freight service by motor truck, the applicant seeks only to transport the freight that it has been handling by rail and by substituting the two motor trucks in lieu of the trains for the transportation of less than carload shipments of freight. It proposes to pick up and deliver such freight by truck at the same railroad stations where it has been picking up and delivering the same by train. It is a depot to depot service rather than a store-door or home-door service such as is being rendered by the appellants as common carriers by motor vehicle. It is in truth and in fact a service which is auxiliary to or in substitution of the service heretofore rendered by the applicant on its trains. The fact that the certificate may enable the railroad to get some of the business in LCL freight now being handled by the appellant motor carriers is not the precise or exclusive test. The applicant proposes to continue the operation of its freight trains for the hauling of freight in carload lots, and to continue the use of its railroad stations and agents for truck service along the railroad for inbound and outbound freight in less than carload lots. At stations where it has no agent the

freight and express is to be shipped there and cared for by a caretaker or carried to the next agency station from which the consignee will be notified of the arrival of the commodities in each instance.

It is true that the proof discloses that the existing motor carriers over Highway 49 would be able to handle the LCL freight to and from the localities to be served on the route, and could probably provide for handling all of the LCL freight now being handled by the appellee Railroad Company, the appellant H. & L. Delivery Service, Inc., having a truck each way every day and the appellant West Brothers, Inc., operating from two to nine trucks each way every day. But since both the appellants and the appellee are large taxpayers in the state, we are unable to say that the Public Service Commission was manifestly wrong, acted arbitrarily or capriciously, or beyond its power, or that it violated any of the constitutional rights of the existing carriers in allowing the appellee Railroad Company to devise ways and means of retaining some of its LCL freight business and handling the same in a more economical and efficient manner than it can be handled by rail in serving the same localities to and from which it has been handling freight for many years, and in making it possible for the appellee railroad company to resume the handling of express along the route where the public is in great need of such express service, which the public along the route had been entirely deprived of since November 16, 1950, and which the existing carriers over the highway have been, and will continue to be, wholly unable to furnish at all.

It is shown that because of the lack of express service it is necessary for a banker at the Town of Magee, for instance, to come or send to Jackson for coin for use at his bank. Likewise it is necessary for the Superintendent of the State Tuberculosis Hospital at Sanatorium to come or send to Jackson for blood for use in transfusions, or phone a highway patrolman or some-

one else to bring it to him, and it is shown by the testimony of a number of other businessmen along the route that because of the lack of express service they are greatly inconvenienced. For instance, if a commodity is shipped by express from points north of Jackson and consigned to Mendenhall or Magee it is necessary that the consignee drive to Jackson and get such a commodity, since it cannot be carried on to its destination by express service.

In the cases before the Interstate Commerce Commission styled, Kansas City Southern Transport Co., Inc., Extension of Operations, No. M. C. 61438, prior to report 10 M. C. C. 221, 1 Federal Carriers Cases 7293; Seaboard Air Line Railway Co., Motor Operations, No. M. C. 86687 (Sub. Nos. 1-10, 15, 18), prior report 17 M. C. C. 413, 1 Federal Carriers Cases 7379; Landa Motor Lines, Contract Carriers Application, No. M. C. 88370, prior report 22 M. C. C. 213; Chicago, Rock Island & Pacific Railway Co., Extension of Operations, No. M. C. 48602 (Sub. Nos. 2-5), prior report 19 M. C. C. 702, 1 Federal Carriers Cases 7408; and Louisville and Nashville Railroad Co., Common Carrier Application, No. M. C. 89811, the operation of the railroads was limited to a service auxiliary to the normal railroad traffic by the following condition: "Shipments transported by applicant shall be limited to those which it receives from or delivers to either one of the railways under a through bill of lading covering, in addition to movement by applicant, a prior or subsequent movement by rail." But this limitation was removed by the Interstate Commerce Commission in the later case of Kansas City, Transport Co., Inc., Common Carriers Application No. 61438, 2 F. C. C. 7683, after a consolidation of all of the above cited cases. Cf. The Santa Fe Transportation Co.-Petition for Modification of Certificate, M. C. 30605, 10 Federal Carrier Cases 487, 33,118, but which is not controlling here. There the railroad wanted to eliminate even the requirement that the proposed service be auxiliary to its railroad operation.

It is true that when the O. D. T. Order No. 1 went into effect in 1942 the applicant entered into a contract with the appellant H. & L. Delivery Service, Inc., to haul its LCL freight because the order prohibited the moving of a box car in transit which contained less than ten tons of freight, and the proof shows that the service of this motor carrier under that contract was satisfactory. But when the order expired on May 28, 1949, the applicant Railroad Company resumed the transportation of such freight by rail, as it had a right to do under the contract upon 30 days notice to the said appellant motor carrier. It had continued the transportation of express by train throughout its contract with the appellant H. & L. Delivery Service, Inc., and thereafter until it was compelled to discontinue the express service on November 16, 1950, when its passenger trains were discontinued, since the Railway Express Agency was not justified in conducting its express business on freight trains, and could not have done so to the satisfaction of its customers.

It is argued that the applicant Railroad Company by its own act in discontinuing its passenger trains had brought about the lack of express service along the route and that it is not therefore entitled to the relief sought by its application. But the Public Service Commission was entitled to consider the *interest of the public* even though the serving of the need for express by granting the application in question would result in some benefit to the Railroad Company. Then, too, the Railroad Company was entitled to resume its transportation of LCL freight upon the repeal of the O. D. T. Order No. 1, even though it is undisputed that the appellant H. & L. Delivery Service, Inc., is willing and able to take care of that much of the railroad's business for the railroad company.

Finally, we held in the case of Cobb Bros. Construction Co. v. M. & O. R. Co., 213 Miss. 706, 57 So. 2d 570, that the findings of the Public Service Commission

are prima facie correct and that this Court should not substitute its judgment for that of the Commission and disturb its findings where there is any substantial basis in the evidence to support its findings, or where the Commission's ruling is not capricious or arbitrary, or manifestly against the evidence, or beyond the power of the Commission to make, or does not violate some constitutional right of a protesting carrier.

Again in H. & L. Delivery Service v. Mississippi Public Service Commission, (Miss.) 35 So. 2d 713, it was held that the Court should not disturb a decision of the Public Service Commission granting a certificate of public convenience and necessity to operate as a restricted common carrier by motor vehicle except where the judgment of the Commission is clearly wrong.

We must adhere to the foregoing decisions on findings of fact by the Commission and, therefore, must affirm the judgment of the Circuit Court which affirmed the judgment of the Commission, in granting the certificate in the instant case under the terms and conditions set forth in the Commission's order or judgment.

Affirmed.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.