**HUMBLE OIL & REFINING CO. v. RAIL-ROAD COMMISSION OF TEXAS et al.**

**FISCHER v. SMITH et al.**

**ROWAN & NICHOLS OIL CO. v. RAIL-ROAD COMMISSION OF TEXAS et al.**
Civ. Nos. 31, 36, and 46.

District Court, W. D. Texas, Austin Division.
Feb. 21, 1940.

Rex G. Baker, E. E. Townes, R. E. Seagler, Felix A. Raymer, and Carl Illig,

Jr., all of Houston, Tex., R. E. Hardwicke, of Fort Worth, Tex., and Powell, Rauhut & Gideon, of Austin, Tex., for plaintiff Humble Oil & Refining Co.

F. W. Fischer, of Tyler, Tex., and W. T. Saye, of Longview, Tex., for plaintiff F. W. Fischer.

Dan Moody, of Austin, Tex., and Rice Tilley, of Fort Worth, Tex., for plaintiff Rowan & Nichols Oil Co.

Gerald C. Mann, Atty. Gen., of Texas, and James P. Hart, D. D. Mahon, E. R. Simmons, Tom D. Rowell, Jr., Edgar Cale, and Lee Shoptaw, Assts. to Atty. Gen., for defendants.

Before SIBLEY, Circuit Judge, and ALLRED and McMILLAN, District Judges.

SIBLEY, Circuit Judge.

These cases were brought for the purpose of enjoining certain orders of the Railroad Commission of Texas fixing and allocating allowables for the East Texas field. Inasmuch as the three cases involve substantially the same matters, they have been heard together before a three-judge court. Having heard the evidence, the law and the argument of counsel thereon, we will now briefly state our conclusions with regard thereto. Enough will appear in the body of the opinion to dispense with the necessity for any further statement of the nature of the various cases.

First, the court has jurisdiction in each case.

Second, in the case of F. W. Fischer, an injunction, either temporary or permanent, ought not to be granted, because no irreparable injury is shown to him by the operation of the order. It does not operate unreasonably as to him.

We find, as will appear, that the situation is otherwise as to the other litigants. We think that the present injury to each of them is clear, practically admitted, and the only reply to it is that in the future the injury under this order may be returned to them. We regard that contingency as so uncertain as to make it our duty to look principally to the present operation, and to say that they have established such an injury in its nature irreparable, and without any other remedy at law as to make it our duty to examine the order.

That part of the order which fixes the top allowable made to prevent waste, the Commission had power to make, and it is not arbitrary or unreasonable. The statute, Vernon's Ann.Civ.St.Tex. art. 6049b, which declares that pumping wells of the depth that all wells have in the East Texas oil field and which can produce no more than twenty barrels per day in thirty consecutive days are "marginal wells", and not to be restricted by the Commission, is not patently invalid. These wells are almost wholly on the edges of the field and are approaching exhaustion. The Legislature could make of them a separate class, and in view of the expense of operating them by pumping and of their probable short life, the fixed allowable granted them is probably not arbitrarily fixed. The amount of the present top allowable to them is less than one per cent, and the effect of it on the fairway wells which are here complaining is too uncertain and insignificant to require a decision on the constitutionality of the statutory classification.

The portion of the order which prorates the remainder of the top allowable among the non-marginal leases and wells so operates that about three-fourths of it is distributed on a flat basis per well so as to give each well an initial twenty barrels per day, but with three days of shut down each week, it makes an equivalent of about 11.7 barrels per day. The remaining one-fourth is prorated by a formula which takes account of the productive capacity or potential of each well, and the acreage, sand thickness, and bottom hole pressure of each lease, all as factors in fixing the allowable for the wells on the lease. This operates to restrict more drastically the production from the best wells and leases in the fairway, where all those of Rowan & Nichols Company are and most of those of Humble Oil Company, than that from less productive wells to the east and west, and that from more densely drilled leases in the fairway. Is this result so unreasonable as to make the order contrary to the statute, Vernon's Ann.Civ.St.Tex. art. 6049c, § 7, or the Fourteenth Amendment?

The question under the two seems to be approximately the same. If the proration is unreasonable, the statute doesn't give the Commission authority to make it. If it is so unreasonable as to be arbitrary, the Constitution does not permit it to be done either by the Legislature or the Commission.

The Commission as to all wells at first made a straight per well proration.

The Commission's orders of this sort were held unreasonable. A later order which combined well potential with a flat per well allowance so that about half of the total was distributed according to potential was upheld as reasonable. It is not now urged that no basic flat per well allowable should be made, but only that three-fourths of the whole should not reasonably be so apportioned. The reason for distributing three-fourths of the allowable on a flat basis per well, or for distributing any of it on that basis, is not precisely disclosed. As in the case of marginal wells, it seems to be thought necessary in order to keep the poorer wells, especially those having to be pumped, going at all. If they were forced out, the oil they would produce might in fact never be produced, causing waste; or shut down might be a deprivation of their owners' property contrary to the Constitution. The evidence here, however, is that even with a pumping well production can be profitably continued on five to ten barrels per day. We can think of no reason why a higher allowable per day should be fixed for non-marginal wells when to do so makes three-fourths of the distributable oil go neither according to the productive capacity of the wells nor according to the oil belonging to the several leases. That the Legislature fixed a figure of twenty barrels for marginal wells is without great significance, for they are perishing wells. Others which are near the border line will soon enough enter that class, and need not prematurely be treated as such. The drilling density of wells is so diverse on different leases otherwise comparable that to distribute three-fourths of a top allowable on a flat basis per well without reference to the oil reserves of the lease or the productive capacity of those wells, which constitute the value of the property, is unreasonable and therefore in violation of the Constitution and the statute. It is not for us to suggest a proportion or a formula. We think the present proportion unsustainable.

We do not say that the time element, the probable life of the wells, may not be considered in an apportionment, though there is necessarily much uncertainty involved. We do not say that either presently or ultimately each lease must be allowed to produce in exact proportion either to its present or original oil in place. All of these may be given a reasonable consideration, sacrificing property interests as little as may be in the effort to achieve the public aim of conservation. Some inequalities attend all legal regulation, and must be borne, but the regulation itself must be on a fair principle and founded on good reason. Previous decisions have established a flat per well apportionment to be unreasonable, and also one which was substantially that, though some effect was given to well potential. We now hold that with the wide differences in well density and in well capacity that exists in the East Texas field, an apportionment of three-fourths on a flat per well basis is not justified by a good reason— is unreasonable.

As the conclusion from this holding, we will deny the temporary injunction to the Rowan & Nichols Company for the reason that one was denied in respect to the Humble Company, and we think it best to let matters go along on an even keel with no differences in the oil field. Permanent injunctions will be granted both to the Rowan & Nichols Company and to the Humble Company, but we do not wish to enter the injunctive decrees and upset the oil field until an opportunity has been given to decide the future of this case. For that reason, for the period necessary to make a determination, about which we will hear you gentlemen, we desire that a decision be reached as to whether or not an appeal is to be taken, or whether the decision will be submitted to on the part of the Railroad Commission.