BARNWELL, INC., et al. *v.* SUN OIL COMPANY, et al.

No. 42947     April 13, 1964     162 So. 2d 635

*R. M. Nichols,* Shreveport, La.; *Forrest B. Jackson,*
Jackson, for appellants.

*Joe T. Patterson,* Atty. Gen., *Kenneth I. Franks,* Jackson: *John T. Armstrong,* Hazlehurst; *Edwin M. Cage,* Dallas, Texas, for appellees.

Rodgers, J.

Barnwell, Inc., Barnwell Drilling Company, Inc., and Barnwell Production Company, filed a petition with the State Oil & Gas Board of Mississippi, requesting an amendment to the Special Field Rules for the Lower Tuscaloosa Pool in the McComb Oil Field in Pike County, Mississippi. The petition alleges that on March 15, 1961, the Oil & Gas Board of Mississippi (hereinafter called the Board) amended the Special Field Rules for the McComb Oil Field as originally promulgated on October 21, 1959, after the approval of the unitization agreement of certain owners, royalty owners and other interested parties. It is said that Rule 2 in actual practice had seriously discriminated against the petitioners and others, in that there had been a reduction of the daily

allowable production to the individual drilling units of not to exceed forty barrels of oil per day, which is greatly below the maximum efficiency daily rate of production of some of the wells, and therefore there should be appropriate amendments to Rule 2 as to the allocation of production and the fixing of daily allowables for the pool and the method of making allocation. The petitioners annexed to their petition a proposed amendment which they alleged to be just and equitable, and would provide for the maximum efficiency daily rate of production of the McComb Oil Field so as to allocate daily allowables to individual drilling units and to the field-wide units. It is alleged that heretofore the allocations in the McComb Oil Field has been discriminatory and has not protected the coequal and correlative rights of all owners and that a continuation of the effectiveness of Rule 2 as it is now in effect will amount to the taking of the property of petitioners without due process of law, and is a denial of equal protection of the law under the Fourteenth Amendment to the Constitution of the United States and is a denial of due process of law guaranteed by §14, Art. 3, Miss. Constitution 1890.

The proposed amendment provided that each well operating in the McComb Oil Field in the Lower Tuscaloosa Pool should be tested at various rates of production for a given twenty-four hour period to determine the maximum efficiency rate of production, and that the total allowable for the McComb Field for each twenty-four hour day should be then determined by adding the maximum efficiency rate of production for each well, and that each well be permitted to produce not in excess of its maximum efficiency of daily rate of production. A method, or formula, is then suggested by which each well would be permitted to produce oil. Process was duly published, giving all interested parties notice of the desired change in Rule No. 2. Parties were notified to appear at a given time to contest the proposed ap-

plication. In due time, the Sun Oil Company filed an answer as a unit-operator and as an individual owner-defendant, wherein it admitted the allegations as to the rule heretofore established by the Board but denied the allegations of the petition as to the claim that the field rule should be amended as proposed by the petitioners. It was affirmatively asserted that the petitioners had not alleged any changes of conditions subsequent to the time of the hearing, at which the field rules were established, that would warrant any change in the rules there fixed. H. E. Allen and Allen-Pullen Company, two owners of interest in the McComb Oil Field, appeared and filed a motion requesting the Board to docket and dismiss the petition filed by the petitioners upon the ground that the petition raises the same issue as had been previously decided by the Board; that the issue is between the same parties and that the petition does not contain any averments of material facts with reference to the amendment of the oil field rules that have not been previously adjudicated by the Board. The Board proceeded to hear the motion, a copy of the original proceedings amending the field rule was introduced, including a motion by the appellants here, Barnwell Production Company and Barnwell Drilling Company, to dismiss the application to establish unitization agreement and to amend the field rules for the Lower Tuscaloosa Pool of the McComb Oil Field. This motion alleged that the Board did not have the power to establish the rule sought to be established by the petition to amend the field rules and that such amendment was arbitrary, discriminatory, confiscatory, and amounting to the deprivation of private vested property rights contrary to, and in violation of, the Bill of Rights of the Mississippi Constitution, 1890, particularly § 14 thereof, without due process of law, and was in violation of the Fourteenth Amendment to the United States Constitution.

The petitioners offered in evidence the entire docket of the former proceedings leading up to and including the order of the Board fixing the field allowable. The chief engineer of the Board testified that he had not personally made any bottom hole test since the former order fixing the maximum efficiency rate at 12,000 barrels of oil per day. He testified the allowables were allocated on the surface acreage basis. The petitioners then introduced expert petroleum engineers, who testified that the maximum efficiency rate of production should be established by testing each well and determining therefrom the pool efficiency rate of production so as to give proper allocation and allowables to the various drilling units. This evidence was offered to show that some of the wells in the McComb Oil Field had a maximum efficiency rate of as high as 300 barrels or more per day, but were being permitted to produce only forty barrels, and that by decreasing the flow, there was a loss of gas which increased the oil-gas ratio and that this meant there would be a loss in the ultimate recovery from the Tuscaloosa Pool in the McComb Oil Field and that loss would be a primary waste.

The Board, after having heard the evidence and the arguments of attorneys, sustained a motion of H. E. Allen and Allen-Pullen Company to dismiss the petition to amend the field rules as suggested by petitioners, particularly Rule 2, Special Field Rules for the McComb Field entered by the Board on March 15, 1961. The petitioners appealed from the order of the Board to the Circuit Court of Pike County, Mississippi, and from an order of the Circuit Court an appeal has been perfected to this Court.

I

The powers of the State Oil & Gas Board are set forth in §6132-10, Miss. Code 1942, Rec., taken from Chap. 163, § 1, Laws of 1956. By the second paragraph

of this statute, it is provided: "* * * (b) The board shall have the authority, and it shall be its duty to make such inquiries as it may think proper to determine whether or not waste, over which it has jurisdiction, exists or is imminent. In the exercise of such power the board shall have the authority to collect data; to make investigations and inspections; to examine properties, leases, papers, books and records, including drilling records and logs; to examine, check, test, and guage oil and gas wells, tanks, refineries and modes of transportation; to hold hearings; to require the keeping of records and the making of reports; and to take such action as may be reasonably necessary to enforce this act." The statute also provides that after notice of hearing, the Board is granted authority, and it shall be its duty to make such reasonable rules and regulations and orders from time to time in the proper administration in the enforcement of the act, and to amend the same, after due notice and hearing for the purposes therein set out.

The Board has the authority to require the operation of wells with efficient gas-oil ratios and to fix the limits of such ratios. It has authority to regulate secondary recovery methods, including the introduction of gas, air, water or other substances into the producing formation. It also has authority to allocate and apportion the production of oil or gas, or both, from any pool or field for the prevention of waste as therein defined, and to allocate such production among or between tracts of land, under separate ownership in such pool, on a fair and equitable basis, to the end that each tract will be permitted to produce not more than its just and equitable share of the pool; provided, however, the owners and producers of each discovery well in the new field or pool shall certify to the Board an itemized list of the expenses incurred in the actual drilling of the wells.

Section 6132-16, Miss. Code 1942, Rec., permits any interested person the right to have the Board call a hearing for the purpose of taking action in respect to any matter within the jurisdiction of the Board upon request therefor in writing.

Under Section 6132-21, Miss. Code 1942, Rec., the Board has the power and authority to regulate drilling and production, and to prevent waste, to protect and enforce correlative and coequal rights of the owners in the pool, which allocation or apportionment of production shall be made on the basis of, and in proportion to, the surface acreage content of the drilling unit prescribed for the production horizons for the pool, so that each prescribed unit shall have equal opportunity to produce the same daily allowable, on a surface acreage basis.

The appellants argue that "there was no attack here on the right of the Board to regulate and to prescribe the methods of extraction of the oil from the McComb Oil Field for the purpose of conservation, but what the instant petition here was attempting to demonstrate to the Board (was) that under the operation of Rule 2, that had been adopted eighteen months prior to the hearing, that there had been discrimination and that amendments were required to the rules so as to prevent arbitrary and unreasonable application of the rule that the Board had already adopted." It is then argued that a change had occurred, that there is now an alarming increase of gas, oil ratio per well, so that a proper maximum efficiency rate of production is not being had from the pool or from the wells in the field, and that waste is occurring under the rules that had already been adopted.

Appellants contend here that they made out a prima facie case of waste, by the testimony introduced, which was brought about by a change in the gas, oil ratio and

that such a change had occurred since the former order fixing the rule for the allocation of field allowable.

The record discloses that the McComb Oil Field was voluntarily unitized and a petition to approve the unitization agreement and to adopt Special Field Rules was established by the Board on March 15, 1961. The Special Field Rules were amended and Rule 2 became effective at 7 A. M., April 1, 1961. The Oil and Gas Board adjudicated the total acreage underlying the Tuscaloosa Pool in the McComb Field to be 12,498.40 acres. Some of the owners and royalty operating interests did not voluntarily join in the unitization program, and these operators are called individual drilling units and the balance of the field is described as "Fieldwide Drilling Units."

The allocation of production is set out in Rule 2, and is as follows:

"A. The maximum efficient daily rate of production of said pool shall be determined and fixed by the Board, which shall be such pool's daily allowable production.

"B. The daily allowable of said pool shall be allocated as follows: To each individual drilling unit, there shall be allocated that proportionate part of the pool's daily allowable that the surface acreage content of such individual drilling unit bears to the total surface acreage contained within all individual drilling units plus the total surface acreage contained within the fieldwide unit. The remainder of the daily allowable shall be allocated to the fieldwide unit.

"C. Any unit which is not capable of producing without committing waste, the allowable assigned to it under Rule 2 (B) shall be considered as a deficient unit. The difference between the allowable assigned to a deficient unit and that which it is capable of producing without waste shall be distributed by the Board to the nondeficient units on the surface-acreage basis of apportionment prescribed in said Rule 2 (B).

"D. The allowable production of the fieldwide unit may be produced by any well or wells on said unit provided, however, that no well shall be operated in such manner as to cause waste as defined by the Laws of Mississippi and no fieldwide unit wells directly or diagonally offsetting individual drilling units shall be allowed to produce more than twice the daily allowable assigned to non-deficient individual drilling units."

It appears from the record that the argument of the appellants here is similar to the contention of the appellants in Corley v. Miss. State Oil & Gas Board, 234 Miss. 199, 105 So. 2d 633, wherein this Court said: "Clearly the Board had the power to define the zero isopach line of the pool", and pointed out that the Board carefully adhered to the statutory requirements of allocation by surface acreage, and that the reduction in allowable per surface acre and the redefining of the field or the aerial extent of the pool were within the Board's statutory power. The Court then said: "Reading the conservation objectives of the Act together with the powers vested in the Board, and considering them in the light of the evidence in this case, we do not think it would be fair or equitable to permit a very small minority of small fractional owners in this common source of supply of hydrocarbons to prevent the Board and the overwhelming majority of the operating and royalty owners from pursuing a unitization program designed to obtain a maximum recovery from the field."

In the instant case, we agree with the Board, upon the facts here presented, because we do not believe it would be fair to the owners and parties of interest, at whose expense a secondary recovery has been made possible, for the Board to multiply the production of appellants who have taken no part in making it possible to obtain the secondary recovery.

The testimony here offered by appellants on the proposed amendment to Rule 2 in its final analysis simply

means that the production in the Barnwell tracts would be increased six or seven times and the allowable production of the fieldwide unit would be reduced proportionately.

■■ We have come to the conclusion, from a careful study of the record in this case, that the order of the Board dismissing the petition was correct for the following reasons: The burden of proof was upon the appellants to establish its charge that a change had developed in the maximum efficiency rate of production since the order of the Board fixed the daily allowable, to such an extent as to warrant the Board to amend "Rule 2, Allocation of Production", to prevent waste. The burden of proof was upon the appellants, who asserted the affirmative on the issue presented before the Board. 42 Am. Jur., Public Administrative Law, §§ 131, 132, pp. 466-467; 73 C. J. S., Public Administrative Bodies and Procedure, § 124, p. 444. Cf. Miss. Oil & Gas Board v. Superior Oil Co., 202 Miss. 139, 32 So. 2d 200.

■■ It is said in 2 Am. Jur. 2d, Administrative Law, § 391, pp. 197, 198: "It is generally held that the proper allocation of the burden of proof is among the essential rules of evidence which must be observed in adjudications by administrative agencies. As in court proceedings, the burden of proof, apart from statute, is on the party asserting the affirmative of an issue before an administrative tribunal. This is usually the claimant, complainant, or applicant, but the party resisting a claim may have the burden of proving a bar to such claim, such as a statutory exception, and, while the burden of proof never shifts, the burden of proceeding with the presentation of evidence does shift." Moreover, the findings of an administrative agency are prima facie correct, and the reviewing court may not substitute its judgment for that of the administrative agency where there is a substantial basis in the evidence

for such finding. Miss. Public Service Commission v. I. C. R. R. Company, 235 Miss. 46, 108 So. 2d 573; Illinois Central R. Company v. Jackson Ready-Mix Concrete, 243 Miss. 72, 137 So. 2d 542; The Ohio Oil Company v. Porter, 225 Miss. 55, 82 So. 2d 636; Cobb Bros. Const. Co., Inc. v. Gulf, Mobile & Ohio R. Co., 213 Miss. 706, 57 So. 2d 570; West Brothers, Inc. v. Illinois Central R. Co., 222 Miss. 335, 75 So. 2d 723.

██ ██ The testimony introduced in the instant case does not establish that there had been any material change in the maximum efficiency rate of production which was not known or anticipated at the time the original Field Rule No. 2 was adopted. The testimony here attempts to show that the original method of calculating or determining the allowable is not in fact as efficient as the type or method proposed by the appellants, particularly so that an allowable may be set up for an individual well.

██ ██ We are of the opinion that the Board was not in error in rejecting the new method offered by appellants for determining a well allowable, because the proposed amendment is not in accord with the surface acreage method set out in Mississippi Conservation Laws, especially Par. (d). Section 6132-21, Miss. Code 1942, Rec., is as follows: "Except where otherwise provided, any allocation or apportionment of production shall be made on the basis of and in proportion to the surface acreage content of the drilling units prescribed for the producing horizons for the pools so that each such prescribed unit shall have equal opportunity to produce the same daily allowable, and any special unit of less than the prescribed amount of surface acreage shall be allowed to produce only in the proportion that the surface acreage content of any such special unit bears to the surface acreage content of the regular prescribed unit; provided, however, that in the event any well in attempting to make its allowable should be operated in a

way that would commit waste as herein defined, or to the detriment of the field as a whole, the allowable for any such well shall be subject to adjustment.''

■■ This Court has said that the Legislature has fixed under the above statute surface acreage as the basis for apportionment of production in each unit. Humble Oil & Refining Company v. Welborn, 216 Miss. 180, 62 So. 2d 211. The allocation or apportionment of production made on the basis of, and in proportion to, the surface acreage content of the drilling unit is the only method authorized by the Legislature, and the authority to so do rests with the State. California Company v. Britt, 247 Miss. 718, 154 So. 2d 144.

## II

■■ Appellants were parties to the action at the time when the rule complained of was adopted and having made no appeal from the order, the order was binding on them unless they could show that a change had occurred in the maximum efficiency rule of production for the McComb Oil Field, and since we are of the opinion that the appellants failed to show a material change in the maximum efficiency rule of production for the McComb Oil Field, they are not permitted to obtain a rehearing on the same question determined in the previous order from which they did not appeal. See State Oil & Gas Board v. Superior Oil Co., 202 Miss. 139, 30 So. 2d 589, 32 So. 2d 200.

■■ We do not believe the appellants have been denied due process of law and equal protection of the laws under the Constitutions of the State and Federal Governments. The police power of the state includes not only regulations to promote public health, good morals, and good order, but also the right to regulate and promote the development in industry and utilization of natural resources in order to add to the wealth and prosperity of the state. This Court has upheld the con-

stitutionality of §10 (a) of the Oil and Gas Conservation Act (1948), in the case of Superior Oil Company v. Foote, 214 Miss. 857, 59 So. 2d 85, 218 Miss. 911, 59 So. 2d 844. ██ ██ The police power of a sovereign state does not find its source in the written constitution of the state, it is a power inherent in the existence of a sovereign government. Superior Oil Company v. Beery, 216 Miss. 664, 63 So. 2d 115.

We are of the opinion that the case of Corley v. Miss. State Oil & Gas Board, 234 Miss. 199, 105 So. 2d 633, fully answers the contention of appellants that the failure to change the allocation of the daily ''MER'' was the denial of due process or equal protection of the law, because the Court in that case passed upon the same type of allocation as is shown in the instant case.

We are now therefore of the opinion that the Board's action in dismissing the petition was proper, because it is apparent that the petition filed in the instant case is an effort to obtain a rehearing on the order in which the field allocation was established.

The order of the circuit court affirming the order of the Board should therefore be affirmed.

Affirmed.

*Lee, C. J., and Ethridge, McElroy and Patterson, JJ.,* concur.