ETHRIDGE, Chief Justice.
This is an appeal from a judgment of the Circuit Court of Hinds County affirming an order of the State Oil and Gas Board, and involves primarily an order of the Board amending the field rules and redefining the gas pools in part of the Gwin-ville Field of Jefferson Davis and Simpson Counties. We hold that there is substan *603 tial evidence to support it and two related orders.
In 1952 the Board adopted special field rules for the Eutaw-Upper Tuscaloosa Gas Pool in the Gwinville Field. They defined that pool as follows:
The Eutaw-Upper Tuscaloosa Gas Pool as used herein shall he construed to mean those strata of the Eutaw-Upper Tuscaloosa formation productive of gas from the depths of 7100 feet subsea and 7800 subsea.
B & D Corporation filed with the Board a petition to redefine the Eutaw-Upper Tuscaloosa Gas Pool, by designating two separate and distinct gas pools in a part of the Gwinville Field, to be called “A” and “B” Pools. The petition was contested by Gulf Oil Corporation and Superior Oil Company, appellants. At the hearing before the Board, petitioner produced three witnesses: its geologist, a consulting engineer specializing in log evaluation, and a consulting petroleum engineer. Contestants’ three witnesses were a petroleum engineer employed by Superior, and a geologist and a production engineer representing Gulf. The testimony of these witnesses is conflicting in many respects.
Careful examination of the record reflects that at least the preponderance of the evidence justified the finding of the Board that the Eutaw-Upper Tuscaloosa “A” and “B” Gas Pools are separate and distinct, that they are not connected, and are separated by a substantial interval of shale and three water sands.
At the close of the hearing, the Board entered an order which sustained substantially the petition of B & D Corporation and which amended the rules of the Gwin-ville Field so as to identify and define the Eutaw-Upper Tuscaloosa “A” Gas Pool and the “B” Gas Pool “as separate and distinct pools in the Gwinville Field, said pools having been encountered in petitioner’s well” known as the B & D Corporation, et al. — Wigington No. 1 Well. The order stated:
(a) The Éutaw-Upper Tuscaloosa “A” Gas Pool as used herein shall be construed to mean those strata of the Eu-taw-Upper Tuscaloosa Gas Formation underlying said field productive of gas from the electric log interval of 7950 to 7990 feet in the B & D Corp. et al-Wigington No. 1 Well located 100 feet North of the South line and 100 feet East of the West line of the SW '54 of NE 54 of Section 19, Township 9 North, Range 18 West, Jefferson Davis County, Mississippi, and including those strata productive of gas which are interconnected and which can be correlated therewith.
(b) The Eutaw-Upper Tuscaloosa “B” Gas Pool as used herein shall be construed to mean those strata of the Eu-taw-Upper Tuscaloosa Gas Formation underlying said field productive of gas from the electric log interval of 7990 feet to 8160 feet in the B & D corp. et al—Wigington No. 1 Well located * * * [as described above] * * * and including those strata productive of gas which are interconnected and which can be correlated therewith.
C. The Eutaw-Upper Tuscaloosa “A” Gas Pool and the Eutaw-Upper Tuscaloosa “B” Gas Pool as herein defined shall be limited to the segment of the Gwinville Field being North of the most Northern known fault and West of the Southern-trending intersecting fault in which the B & D Corp. et al — Wiging-ton No. 1 Well as previously described in this order is located.
The Board also entered two supplementary orders, one granting B & D Corporation authority to produce its Wigington No. 1 Well as an exception to the spacing pattern, and another licensing a dual completion of that well.
The standard for judicial review of orders of the State Oil and Gas Board is whether the order is supported by substantial evidence, is arbitrary or capricious, beyond the power of the Board to make, or violates some constitutional right of the *604 complaining party. California Co. v. State Oil and Gas Board, 200 Miss. 824 at 842, 27 So.2d 542 at 546 (1946). In the definition of gas pools, the granting of spacing exceptions, and authorization to dually complete a well, the Board acts primarily in a legislative and administrative capacity.
The Board was justified from the evidence in holding that perforations and production of the various strata subsequent to the 1952 definition have not made the sands in the two pools connected so as to form one pool. In Jones v. Continental Oil Company, 420 P.2d 905 (Okl. 1966), there was evidence accepted by the Oklahoma Commission that all of the twenty-one producing sands were in communication with each other as the result of completion and production practices in the field. In the instant case the Board in effect found to the contrary on ample evidence.
The descriptions of the limits of the “A” and “B” Pools is based on designation of known faults, and is not entirely clear on this record. Apparently the Board was determining the limits on the basis of engineering and geologic facts. We cannot say it was arbitrary or unreasonable. Moreover, no issue is presented in this review of the three orders which would justify a remand solely for a more detailed description.
Although the evidence reflected that there are shale and three water-sands between the “A” and “B” Pools, the Board’s order left no interval between the bottom of the “A” Pool and the top of “B”, the latter being defined as reaching to the bottom of the “A” Pool. The Board’s purpose in doing this may have been to include within “B” any miscellaneous gas-producing structures interconnected with the “B” Pool. Subsection (b) of the basic order supports this interpretation by stating that “B” includes “those strata productive of gas which are interconnected and which can be correlated therewith.”
Mississippi Code 1942 Annotated section 6132-08(e) (1952) defines a pool in this way:
“Pool” shall mean an underground reservoir containing a common accumulation of oil or gas or both. Each zone of a general structure which is completely separated from any other zone in the structure is included in the term “pool” as used herein.
 It is the duty of the Board to require that separate oil and gas pools be separately produced, so that the hydrocarbons in one of them cannot be commingled with those of another. The Board has ample power to effectuate that responsibility. Miss. Code 1942 Ann. § 6132-10 (Supp.1966). In short, the extension of the boundary of “B” Pool to the base of “A” was not arbitrary or so unreasonable as to invalidate it.
Since the Board has the duty to require that gas or oil pools be separately produced and not commingled, appellant’s argument that the amended order will permit B & D Corporation’s well and other wells dually completed to have a double allowable is not consistent with the statutory requirements. Appellants upon proper application would no doubt be allowed dual completions of their wells. Nor can it be assumed that the Board will treat some of the wells which are dually produced in a discriminatory manner in regard to allocations of production. Moreover, the Board is not bound to adhere to a strata definition made sixteen years earlier when the facts now reflect new data and different requirements.
Affirmed.
RODGERS, JONES, BRADY and IN-ZER, JJ., concur.