240 So.2d 446 (1970)
MASONITE CORPORATION
v.
STATE OIL & GAS BOARD of Mississippi, Earl R. Wilson and Hilton L. Ladner.
No. 45890.
Supreme Court of Mississippi.
October 26, 1970.
*447 Peterson & Harper, Jackson, for appellant.
Brunini, Everett, Grantham & Quin, E.L. Brunini, Jr., John M. Grower, Jackson, for appellee.
INZER, Justice:
This is an appeal by Masonite Corporation from a judgment of the Circuit Court of Clarke County affirming an order of the State Oil & Gas Board granting appellees, Earl R. Wilson and Hilton L. Ladner, a permit to drill a well as an exception with full allowable in the Harmony Oil Field located in Clarke County. We affirm.
On July 14, 1969, appellees Wilson and Ladner filed their application for a permit to drill a well as an exception to the special field rules of the Harmony Field. The application requested that the location be fixed at a point 300 feet from the west line and 200 feet from the south line of the south half of the northwest quarter of Section 21, Township 2 North, Range 15 East, on the unit designated as BensonKramer Unit 21-5. After due notice the State Oil & Gas Board, hereinafter referred to as Board, held a hearing on the application. Appellant Masonite Corporation and others appeared and objected to the granting of a full allowable for the well. None of the objectors contended there, and Masonite does not contend here, that the applicants were not entitled to drill the well as an exception.
The first factual question developed before the Board was the number of acres of this unit that were underlain by hydrocarbons. Wilbur Knight, an expert geologist, testified on behalf of applicants and it was his opinion that there was a minimum of 12.05 acres of this unit underlain by hydrocarbons, which would contribute to and was capable of delivering oil to the proposed well bore. Tom McGlothlin, an expert consulting geologist, testified on behalf of the objectors and it was his opinion that no more than three or four acres of this unit were underlain by hydrocarbons. He further thought that if the well were drilled at the proposed location it would not produce. A study of the testimony of these two expert witnesses reveals that their difference of opinion grew out of their opinion as to the location of the permeability barrier. A dry hole was drilled on the east half of this unit and there are producing wells on the units to the south and west of the unit in question. Both experts were of the opinion that the permeability barrier is located at some point on this unit.
The Board determined from the evidence that there were more than 11.5 acres of this unit underlain with hydrocarbons and granted appellees a permit to drill a *448 well at the proposed location with a full allowable for the unit as provided by the provisions of Section 6132-21, Mississippi Code 1942 Annotated (Supp. 1968).
Appellant contends that the circuit court erred in failing to hold (1) that the order of the Board was arbitrary and capricious and is contrary to public policy and is in contravention of the laws of the State of Mississippi and the rules and regulations of the State Oil & Gas Board, and against the weight of the evidence; (2) that the order is arbitrary and capricious in granting a full allowable on the oil and gas produced, contravenes, and is in violation of the declared policy of the state as set forth in the conservation statute in that the order failed to protect the co-equal and correlative rights of the owners in the Harmony Field and fails to prevent waste as the term is defined in Section 6132-08(k), Mississippi Code 1942 Annotated (1952); (3) that the order is arbitrary and capricious and is in violation of the Constitution of the United States and the State of Mississippi.
We find no merit in the first two contentions made by appellant. It is unnecessary to belabor the point made by appellant that the order of the Board is against the great weight of the evidence. Suffice it to say that the standard in this state for judicial review of the order of the State Oil & Gas Board is well settled. In Superior Oil Co. v. State Oil & Gas Board, 220 So.2d 602 (Miss. 1969), we re-stated the rule first announced in California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So.2d 542 (1946), and it is as follows:
The standard for judicial review of orders of the State Oil and Gas Board is whether the order is supported by substantial evidence, is arbitrary or capricious, beyond the power of the Board to make, or violates some constitutional right of the complaining party. (200 Miss. at 842, 27 So.2d at 546).
There is no doubt that there is substantial evidence to support the finding of the Board on this issue.
The order of the Board allowing the full allowable is not arbitrary and capricious and not in contravention of public policy of this state. The legislature provided by the provisions of Section 6132-21(c), in part, as follows:
(c) Each well permitted to be drilled upon any drilling unit shall be drilled in accordance with the rules and regulations promulgated by the board and in accordance with a spacing pattern fixed by the board for the pool in which the well is located, with such exceptions as may be reasonably necessary where it is shown, after notice and upon hearing, that the unit is partly outside the pool or, for some other reason, a well otherwise located on the unit would be nonproductive, or topographical conditions are such as to make the drilling at such location unduly burdensome. Whenever an exception is granted, the board shall take such action as will offset any advantage which the person securing the exception may have over other producers by reason of the drilling of the well as an exception, but no well drilled and completed as an exception to prescribed, footage limitations for the reason that a portion of the drilling unit upon which such well is located is partly outside the pool or productive horizon shall be allocated a reduced daily production allowable whenever it shall be demonstrated to the satisfaction of the board that the productive acreage underlying such drilling unit is equal to, or more than, the reasonable minimum amount of productive acreage which would underlie such drilling unit under the minimum conditions which would permit the drilling of a well thereon so located as to comply with all applicable footage limitations; provided, however, that each well drilled and completed as an exception to prescribed footage limitations for the reason that a portion of such drilling *449 unit is partly outside the pool or productive horizon shall be allocated a reduced daily production allowable whenever it cannot be demonstrated to the satisfaction of the board that the productive acreage underlying such drilling unit is equal to, or more than, the minimum amount of productive acreage which would underlie such drilling unit under the minimum conditions which would permit the drilling of a well thereon so located as to comply with all applicable footage limitations. Such reduced allowable shall be allocated in proportion to the relationship which the productive acreage, as determined by the board, bears to the reasonable minimum amount of productive acreage which would underlie such drilling unit under the minimum conditions which would permit the drilling of a well thereon so located as to comply with all footage limitations applicable to such drilling unit. (Emphasis added).
Appellees demonstrated to the satisfaction of the Board (1) that an exception was reasonably necessary to obtain production, and (2) sufficient acreage was underlain by hydrocarbons to permit the full allowable as required by the foregoing statute. The Board was prohibited by the statute from allocating a reduced daily production. The Board is a creature of the legislature and it has no powers other than those delegated to it by the legislature. It must follow the mandate of the legislature and it had no choice after having found that appellees had demonstrated to its satisfaction that there was more than the minimum number of surface acres (in this field  11.5 acres) underlain by hydrocarbons other than to allocate the full allowable. Under these circumstances it certainly cannot be said that the Board acted arbitrarily and capriciously. Neither was it acting contrary to public policy since the legislature itself declares the public policy of this state. The Board merely acted in accordance with the statute.
The only real question involved in this case is whether Section 6132-21 is unconstitutional. In deciding this question it is important to keep in mind that it is a well settled principle that all presumptions should be indulged in favor of the validity of the statute and that its unconstitutionality must appear beyond a reasonable doubt before it will be declared invalid. California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So.2d 542 (1946). It is also important to keep in mind that the law of capture is still in effect in this state except insofar as it has been abrogated by the legislature in enacting the conservation laws. Holding to this effect California Co. v. Britt, 247 Miss. 718, 154 So.2d 144 (1963), wherein we said:
Since there was no invasion of appellees' mineral interest by drilling a well on it and all of California's activities have been in accord with the requirements of the conservation act and orders of the board, this is one of those cases, somewhat unusual today, where the law of capture applies: The owner of land "acquires title to the oil or gas which he produces from wells on his land, though part of the oil or gas may have migrated from adjoining lands. He may thus appropriate the oil and gas that have flowed from adjacent lands without the consent of the owner of those lands, and without incurring liability to him for drainage." Elliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W.2d 558, 561, (1948). (247 Miss. at 727, 154 So.2d at 147).
A study of the statute involved reveals that the legislature stated four basic principles therein: (1) the Board has authority to regulate drilling and the location of wells to prevent "reasonably avoidable net drainage," (2) the regulation is for the purpose of sound conservation and it should, insofar as practical, protect the correlative rights of the owners, (3) the granting of exception locations, which exceptions to the rules and regulations concerning *450 a particular field are proper when shown to be necessary, and prescribes the formula for determining the allowable for such exception wells, and (4) prescribing that the allocations for production are to be based on separate acreage content of a unit and that a unit smaller than the prescribed unit within a pool is to have a reduced allowable computed by determining the ratio that the surface unit bears to the acreage content of a regular prescribed unit.
The Board applied the third part, paragraph (c) of the statute, in this case. Appellant argues that since the proof shows that only about ten percent of the oil that this well will produce under a full allowable is oil that actually underlies the unit, the statute is arbitrary and confiscatory and deprives the owners of oil and gas in a common source of their fair and equitable share of such oil and gas and therefore is tantamount to the taking of private property without due process.
The nature of oil and gas is such that conservation measures cannot be designed so as to grant as a matter of law to each owner the exact amount of oil under his tract. There is no way to prove with any degree of certainty the unknown geology beneath the earth. The legislature in enacting the conservation laws evidently realized that the arbitrary application of spacing rules would prohibit some owners from drilling a well on their land and this would result in the confiscation of the oil beneath their land. While the granting of exceptional locations rightfully prevented confiscation or drainage, the adjoining landowner is put in jeopardy of being drained by the exceptional well. Apparently the legislature sought as best it could to provide a formula which would be as fair and equitable as practical in situations where perfect equity could not be done. It decided that the most practical way of resolving the question of drainage and counter-drainage was by surface acreage formula. This decision was no doubt influenced by the fact that many other states had tried other methods and none of those methods had resulted in doing perfect equity. The surface acreage formula is a practical and simple approach to the problem.
We have had the occasion to consider the surface acreage formula in other cases. In Barnwell, Inc., v. Sun Oil Co., 249 Miss. 398, 162 So.2d 635 (1964), Barnwell petitioned the Board to substitute in effect a formula of their own design for that denoted in Section 6132-21. Appellants insisted that the field-wide rules for the unitized McComb Field resulted in discriminatory allowable. The particular rule, it was said, denied due process of law and equal protection of the law under both the Mississippi Constitution and the Constitution of the United States and further was unreasonable and arbitrary. After setting out in full paragraph (d) of Section 6132-21, we said:
This Court has said that the Legislature has fixed under the above statute surface acreage as the basis for apportionment of production in each unit. Humble Oil & Refining Company v. Welborn, 216 Miss. 180, 62 So.2d 211. The allocation or apportionment of production made on the basis of, and in proportion to, the surface acreage content of the drilling unit is the only method authorized by the Legislature, and the authority to so do rests with the State. California Company v. Britt, [247] Miss. [718,] 154 So.2d 144. (249 Miss. at 412, 162 So.2d at 641).
We then stated:
We do not believe the appellants have been denied due process of law and equal protection of the laws under the Constitutions of the State and Federal Governments. The police power of the state includes not only regulations to promote public health, good morals, and good order, but also the right to regulate and promote the development in industry and utilization of natural resources in order to add to the wealth and *451 prosperity of the state. This Court has upheld the constitutionality of § 10(a) of the Oil and Gas Conservation Act (1948), in the case of Superior Oil Company v. Foote, 214 Miss. 857, 59 So.2d 85, 844, 37 A.L.R.2d 415. The police power of a sovereign state does not find its source in the written constitution of the state, it is a power inherent in the existence of a sovereign government. Superior Oil Company v. Beery, 216 Miss. 664, 63 So.2d 115 (249 Miss. at 412, 413, 162 So.2d at 641).
Appellant, although contending that the surface acreage formula is unfair and deprives it of its property without due process of law in violation of the constitutions of the state and of the United States, does not suggest any formula that could be adopted which would assure that each landowner in a pool could secure the exact amount of oil or gas which underlies his land. No such formula could be devised because the formations in which oil and gas are found are not uniform in quality and thickness throughout the unit with each tract having beneath it the same amount of hydrocarbons per acre. Since no such formula can be devised, the surface acreage formula certainly is as fair and as equitable as any formula devised by any other state. It has the added merit of simplicity and certainty. The federal courts have upheld widely diverse conservation schemes enacted by other states. Oklahoma Natural Gas Co. v. Texola Drilling Co., 214 F.2d 529 (10th Cir.1954); Humble Oil and Refining Co. v. Railroad Comm'n of Texas, 35 F. Supp. 573 (W.D.Texas 1940); Bay Petroleum Co. v. Corporation Comm'n of Kansas, 36 F. Supp. 66 (D.Kan. 1941); and Lilly v. Conservation Comm'n of La., 29 F. Supp. 892 (E.D.La. 1939).
There can no longer be any doubt as to the power of the legislature under the police power of the state to regulate and promote utilization of natural resources, subject only to the requirement that such regulations be reasonable and not in contravention of the constitutional provisions. When we view the statute in question in connection with the law of capture, we are of the opinion that it is reasonable and that it is not violative of Section 14 and 17, Article 3, Mississippi Constitution (1890) and neither is it violative and in contravention of United States Constitution, Fourteenth Amendment § 1, prohibiting the taking of private property without due process and just compensation.
For the reasons stated, this case is affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and ROBERTSON, JJ., concur.