329 So.2d 512 (1976)
STATE OIL AND GAS BOARD OF MISSISSIPPI and Texas Pacific Oil Company, Inc., et al.
v.
Robert S. BRINKLEY and Petro Grande, Inc.
No. 48818.
Supreme Court of Mississippi.
March 30, 1976.
A.F. Summer, Atty. Gen., by P.L. Douglas, Asst. Atty. Gen., Brunini, Grantham, Grower & Hewes, Edmund Brunini, Jr., Jackson, for appellants.
Craig Castle, Green, Cheney, Jones, Hughes, McKibben & Stack, Jackson, for appellees.
Before INZER, SMITH and SUGG, JJ.
SMITH, Justice, for the Court:
These proceedings were begun by Petro Grande, Inc., (successor to Robert S. Brinkley), by petition addressed to the Mississippi Oil and Gas Board in which *513 forced integration was sought of the S 1/2 of the NE 1/4 of Section 9 with the N 1/2 of the NE 1/4 of Section 9, Township 1 North, Range 11 East, Jasper County, into a proposed 160 acre drilling unit, with permission to drill. Pursuant to published notice, appellants, Texas Pacific Oil Company, Inc. (and others interested), objected, and, after a hearing, the petition was denied. Petro Grande Inc. appealed from the decision of the Oil and Gas Board to the Circuit Court of Hinds County where the order of the Oil and Gas Board was reversed. The Oil and Gas Board, Texas Pacific Oil Company, and other parties in interest, have appealed here from the ruling of the circuit court.
The proceedings are statutory and were brought by Petro Grande under Mississippi Code Annotated section 53-3-7 (1972), which provides in part:
§ 53-3-7 Integration of interests; pooling agreements and orders.
(a) When two or more separately owned tracts of land are embraced within an established drilling unit, the person owning the drilling rights therein and the rights to share in the production therefrom may validly agree to integrate their interests and to develop their lands as a drilling unit. Where, however, such persons have not agreed to integrate their interests, the board may, for the prevention of waste or to avoid the drilling of unnecessary wells require such persons to integrate their interests and to develop their lands as a drilling unit. All orders requiring such pooling shall be made after notice and hearing, and shall be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense.
Petro Grande alleged in its petition that the relief sought would result in "the prevention of waste" and "avoid the drilling of unnecessary wells."
It appears from the record that Petro Grande, (successor to Brinkley), owned the mineral interests in the S 1/2 of the NE 1/4 of Section 9, Township 1 North, Range 11 East, in Jasper County. It owned .06% of the working interest in the NE 1/4 of the NE 1/4 of Section 9. Texas Pacific, (for convenience used in this opinion to include all objectors), owned virtually all of the working interests in the N 1/2 of the NE 1/4 of Section 9, except the .06% of the working interests owned by Petro Grande.
Texas Pacific at one time had held the mineral leasehold in the S 1/2 of the NE 1/4 of Section 9 and had drilled a well which had resulted in a dry hole. Since then Petro Grande has acquired this interest and in its petition sought to have it combined through forced integration with the N 1/2 of the NE 1/4 of Section 9, owned substantially by Texas Pacific.
While the matter was pending, Texas Pacific filed with the Oil and Gas Board its petition for approval of a plan for unitization of the Smackover Unit in the Lake Como Field which included the N 1/2 of the NE 1/4 of Section 9.
The petition of Petro Grande and the petition of Texas Pacific were mutually exclusive and patently both could not be granted. After some postponements and continuances, one of the continuances having been granted by agreement and another at the request of Petro Grande, the two interrelated (but inconsistent) matters were heard together. It does not appear that there was any objection to this procedure.
At the hearing conducted by the Oil and Gas Board, Texas Pacific put on two geologists who testified for objectors that the S 1/2 of the NE 1/4 of Section 9, sought to be integrated with the productive lands of Texas Pacific, was "dry" and was not underlain by any part of the Smackover Oil Pool of the Lake Como Field as a result of *514 an existing fault and that there was no oil producing Smackover formation beneath the S 1/2 of the NE 1/4 of Section 9. A geologist for Petro Grande gave a contrary opinion. The Board found, on this and other evidence, that to grant the petition of Petro Grande for the forced integration would not have the effect of preventing waste and would not avoid the drilling of unnecessary wells and denied the petition.
On the present appeal it is argued that it was error on the part of the circuit court to hold that the Oil and Gas Board should not have considered the geological evidence. This Court has held, however, that decisions of the Oil and Gas Board may be based upon testimony of geologists. Superior Oil Co. v. Foote, et al., 214 Miss. 857, 59 So.2d 85 (1952).
It was for the Board, as trier of facts, to decide the conflicts in the testimony given by the geologists who testified for Texas Pacific and the geologist who testified for Petro Grande.
While the posture of the case was different in Southwest Gas Producing Co. v. Seale, 191 So.2d 115 (Miss. 1966), in which it was held that pooling of known dry lands with productive lands was unfair, the principle applies with equal or greater force here where such pooling is sought by forced integration.
The circuit court's view that the role of the Oil and Gas Board with respect to Petro Grande's petition for forced integration was, in effect, ministerial and that the Board had no discretion and no alternative but to grant the petition, was not correct. The language of the statute itself provides that the Board "may" order forced integration (provided) it finds that such integration would prevent waste or avoid the drilling of unnecessary wells. In this case the Board found expressly that it would neither prevent waste nor avoid the drilling of unnecessary wells.
The action of the Board in denying the petition was within its statutory power.
In general, in the absence of a mandatory requirement, the power vested in an officer or agency to grant licenses, permits, or other authorizations carries with it the power to exercise a reasonable discretion in granting or refusing them. Administrative boards or officers empowered to issue licenses are not authorized to act arbitrarily or capriciously, but only in the honest exercise of a reasonable discretion.
[73 C.J.S., Public Administrative Bodies and Procedure, section 71 (1951)].
It is the general rule that when a public board such as the Mississippi Public Service Commission is granted certain enumerated powers, there is usually conferred the implied power that may be reasonably necessary to the performance and exercise of the powers expressly granted.
[Mississippi Public Service Commission v. Chambers, 235 Miss. 133, 142, 108 So.2d 550, 554 (1959)].
In Barnwell, Inc. v. Sun Oil Co., 249 Miss. 398, 162 So.2d 635 (1964), this Court held:
The Board has the authority to require the operation of wells with efficient gas-oil ratios and to fix the limits of such ratios. It has authority to regulate secondary recovery methods, including the introduction of gas, air, water or other substances into the producing formation. It also has authority to allocate and apportion the production of oil or gas, or both, from any pool or field for the prevention of waste as therein defined, and to allocate such production among or between tracts of land, under separate ownership in such pool, on a fair and equitable basis, to the end that each tract will be permitted to produce not more than its just and equitable *515 share of the pool; provided, however, the owners and producers of each discovery well in the new field or pool shall certify to the Board an itemized list of the expenses incurred in the actual drilling of the wells.
[249 Miss. at 406, 162 So.2d at 638].
The Court said:
It appears from the record that the argument of the appellants here is similar to the contention of the appellants in Corley v. Miss. State Oil & Gas Board, 234 Miss. 199, 105 So.2d 633, wherein this Court said: "Clearly the Board had the power to define the zero isopach line of the pool", and pointed out that the Board carefully adhered to the statutory requirements of allocation by surface acreage, and that the reduction in allowable per surface acre and the redefining of the field or the aerial extent of the pool were within the Board's statutory power. The Court then said: "Reading the conservation objectives of the Act together with the powers vested in the Board, and considering them in the light of the evidence in this case, we do not think it would be fair or equitable to permit a very small minority of small fractional owners in this common source of supply of hydrocarbons to prevent the Board and the overwhelming majority of the operating and royalty owners from pursuing a unitization program designed to obtain a maximum recovery from the field."
[249 Miss. at 409, 162 So.2d at 639].
The circuit court was in error in considering that the Board's failure to take action within thirty days after the conclusion of the hearing (Mississippi Code Annotated section 53-1-29 (1972)) invalidated the Board's order. It has been pointed out that some of the delay, at least, resulted from postponements by agreement or at the request of Petro Grande. In any event, however, in Superior Oil Co. v. Foote, supra, this Court addressed the question as follows:
Hence appellees say that the hearing was concluded on July 19, and the final order was not entered until about two months thereafter on September 20; that therefore the Board did not comply with the requirement of Sec. 7(f) that it must take action within 30 days after the conclusion of the hearing; and that the order is void.
We cannot agree. The Board had the right to continue the "hearing" in order to determine what it would do. It did this on July 20 until August 17. It then rendered its opinion and continued the matter until September until a proper order could be drafted. Moreover, Sec. 7(f) does not provide that action of the Board taken more than 30 days after a hearing is invalid. That was not the legislative intent. The purpose of the statute was to place upon the Board a responsibility to act expeditiously. We do not consider whether appellees could have had any remedy by mandamus; that is not an issue here. Moreover, appellees do not show that they were prejudiced in any respect by the delay in the execution of the order.
(214 Miss. at 883, 59 So.2d at 96).
It was error for the circuit court to reverse the Oil and Gas Board. The test on judicial review of the acts of an administrative body has been stated by this Court in numerous cases. In Mississippi State Tax Commission v. Package Store, Inc., 208 So.2d 46, 48 (Miss. 1968), the Court said:
The test to be applied by an appellate court to a decision of a commission or administrative agency is whether such decision is supported by substantial evidence or whether such action is arbitrary, *516 capricious, unreasonable or an abuse of discretion.
REVERSED AND THE ORDER OF THE OIL AND GAS BOARD REINSTATED.
GILLESPIE C.J., PATTERSON and INZER, P. JJ., and ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.