GILLESPIE, Chief Justice,
for the Court:
This is an appeal by Petro Grande, Inc., and Robinson Resource Development Company, Inc. (Robinson), from an order of the Chancery Court of the Second Judicial District of Jasper County, Mississippi, which affirmed an order of the Mississippi State Oil & Gas Board (Board). The Board’s order approved a petition of Texas Pacific Oil Company, Inc. (Texas), for the establishment of a plan of unitizing a part of the Lake Como Oil Field located in Jasper County, which produces from the Smack-over sands. The unit thus formed is designated as the Smackover Unit. For reference purposes, the reporter will reproduce herewith a map of the Smackover Unit and the Petro Grande Massey drilling unit which was left out of the Smackover Unit.
Two companion cases have been decided by this Court. In Texas Pacific Oil Company, Inc., et al. v. Petro Grande, Inc., 328 So.2d 660 (Miss.1976), it was held that (1) surface acreage content was the proper basis for allocating allowable production of oil and gas between the Smackover Unit and the non-unitized Petro Grande Massey well; (2) that the evidence supported the field rules prescribing the contributing value to the unit as a basis of allocating production among the members of the unit, and (3) that the use of surface acreage as a basis of allocating daily allowable production of oil and gas between unitized drilling units and the individual non-unitized drilling unit, sharing a common source of oil, did not deny the individual unit owners equal protection of the laws.
In State Oil & Gas Board v. Brinkley and Petro Grande, Inc., 329 So.2d 512 (Miss. *809 1976), the Court upheld an order of the Board denying Petro Grande, successor to Brinkley, the right to forced integration of the S-V2 of the NE-V4 of Section 9, Township 1 N, Range 11 E, with the N-V2 of the NE-Vi of said section 9 into a proposed 160-acre drilling unit with permission to drill. These two companion cases resolve a substantial portion of the controversy between Petro Grande and Robinson on the one hand and Texas on the other.
Texas drilled and completed the Jackson No. 1 well in 1971, and discovered the Lake Como field producing from the Smackover sands at depths below 17,000 feet. Thereafter four other producing wells were drilled within the area found by the Board to constitute the productive limits of the Smackover pool. All of these wells were drilled by Texas except the irregular shaped Massey unit located in the southeast corner of the field, which was drilled by Petro Grande. Texas is the owner of fifty-nine percent of the working interest in the four wells it drilled and operates. Appellant Robinson owns about eleven percent working interest in the four Texas wells and a similar interest in the Petro Grande Massey unit.
The necessary percentage of working and royalty interest owners agreed to Texas’ proposed unit operation of the Smackover pool. As noted on the attached plat, the Smackover pool in question is contained on the north and east by a fault line running from northwest to southeast. There is no contention made on this appeal concerning the location of this fault line. The Board found that on the southwest the limits of the productive area of the Smackover oil pool is a somewhat curved fault line running generally from northwest to southeast, intersecting the northeast fault line in section 10. The location of this fault line is at issue on this appeal. There is no issue as to the limits of the Smackover pool other than the southerly fault line. It will be noted that in addition to the five producing wells shown on the plat within the Smackover pool, four dry holes were drilled outside the producing area. Two other wells located north of the north fault line produced from another level but not from the Smackover pool involved in this case. The field was drilled on 160-acre drilling units.
I.
The main issue before the Court, as we view the case, is whether the Board failed to follow the statute in ordering forced unitization of the Smackover pool because all drilling units of the field had not been drilled.
The 1972 Act [Mississippi Code Annotated section 53-3-103 (1975 Supp.)] under which the Board was operating at the time this forced unit was formed provides in part as follows:
No field unitization shall be approved by the board until each drilling unit of the field has been drilled; however, the board is hereby authorized to waive the requirement that each and every drilling unit be drilled upon a finding of fact that it is not economically feasible for a specific drilling unit to be drilled.
At the time the Smackover Unit was formed, Petro Grande, who had acquired the lease on the S-V2 of the NE-Vi of section 9 after Texas had drilled the dry hole in the SW-Vi of the NE-Vi, was prosecuting a petition to force integration of all interests in the NE-Vi of section 9, and to let them, Petro Grande, drill it. Petro Grande had a small working interest in the N-V2 of the NE-Vi of the section but most of it was owned by Texas.
All witnesses who were asked about it, including Texas’ chief witness, Caskey, said that a well drilled at a regular location on the NE-Vi of the NE-Vi of section 9 would be a commercial well. There is no proof to the contrary.
We are of the opinion that it was within the Board’s power to force unitization of the Smackover field without requiring any further drilling in the NE-Vi of section 9, provided, the other statutory requirements were met. The dry hole drilled in the SW-Vi of the NE-Vi of section 9 is sufficient to meet the statutory requirement that each *810 drilling unit of the field must be drilled. The statute does not require the drilling of a commercially producing well from the Smackover pool. We are of the opinion that the Pittman well, which was dry, satisfies the requirements of the statute.
In Brinkley, supra, the Board’s order denying Petro Grande’s petition to force integration of all interests in the NE-Ví, while not necessarily decisive of the question before the Court, is based on essentially the same geological findings as the instant case.
II.
Did the Board err in finding that Texas had drilled a sufficient number of wells to a sufficient depth and at such location as may be necessary for the Board to approve the boundaries of the unit and determine that the pool had been reasonably developed according to the spacing pattern approved by the Board?
Code section 53-3 — 103 provides in part as follows:
The operators of such unit shall have drilled a sufficient number of wells to a sufficient depth and at such locations as may be necessary for the board to approve the boundaries of the unit and determine that the field, pool or pools have been reasonably developed according to a spacing pattern approved by the board.
Petro Grande and Robinson contend that there is confusion and conflict in the evidence as to the southern boundary of the Smackover pool, especially at its eastern end. We agree that the testimony is in sharp conflict as to the location of the southern fault line. The testimony of Tom Caskey, a petroleum geologist for Texas, substantially corroborated by Alan Jackson, a consulting geologist, was sufficient to justify the Board’s finding concerning the boundaries of the unit, and their finding that the pool had been reasonably developed. The conflicts in the testimony were resolved by the Board in favor of Texas. This is consistent with that said in Brinkley, supra, as follows: “It was for the Board, as trier of facts, to decide the conflicts of testimony given by the geologist who testified for Texas Pacific and the geologist who testified for Petro Grande.” 329 So.2d at 514.
Again, we note the scope of judicial review of the acts of an administrative body as restated in Brinkley, as follows:
The test to be applied by an appellate court to a decision of a commission or administrative agency is whether such decision is supported by substantial evidence or whether such action is arbitrary, capricious, unreasonable or an abuse of discretion. 329 So.2d at 515-516.
Other arguments are advanced by Petro Grande and Robinson, which we have carefully considered, including the contention that the unit as formed is basically unfair to Petro Grande and Robinson. But we are of the opinion that these were arguments for the State Oil & Gas Board and this Court has no authority to reverse the action of the Board in these respects.
AFFIRMED.
All Justices concur.
[See following illustration]

*811